ROGER U. HARBECK *et al.*, Plaintiffs and Counterdefendants-Appellees, *v.* DANIEL JAMES HOLLAND, JR., *et al.*, Defendants and Counterplaintiffs-Appellants.

Third District   No. 78-461

Opinion filed February 13, 1980.

Sidney Z. Karasik, of Chicago, and Kevin Kelly, of La Salle, for appellants.

Eric B. Deobler, of Peter F. Ferracuti & Associates, of Ottawa, for appellees.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

The defendants-counterplaintiffs (the Hollands) appeal from a judgment of the Circuit Court of La Salle County, by the terms of which the trial court dismissed, at the close of proofs on behalf of the Hollands,

the claim of the Hollands that they be found as owners by adverse possession of a certain strip of land in dispute as between the parties.

Plaintiffs in the action in the instant case, Roger and Sandra Harbeck, are owners of record of a farm in La Salle County. The defendants, Daniel Holland, Jr., and his sons, Dennis Holland and Douglas Holland, are tenants of the land owned by Daniel Holland, Jr.'s mother, Ethel Holland. This land is contiguous to, and directly to the south of, the Harbeck property.

The Harbecks filed a complaint in the circuit court, asking the court to find that Daniel, Dennis and Douglas Holland were trespassing upon the land of the Harbecks, by use by the named Hollands as a driveway and crop land. The strip in question was some 20 feet by 2400 feet located at the extreme south of the Harbeck property and contiguous to the extreme north end of the Holland farm. The Harbecks sought damages and injunctive relief to prevent continuation of the asserted trespass. Daniel, Dennis and Douglas Holland disputed the accuracy of the Harbeck survey. They also joined Ethel Holland, record owner of the southern farm, and counterclaimed that Mrs. Holland was the owner of the disputed strip by adverse possession. The Hollands also asked for damages and injunctive relief. Since equitable relief was prayed for, the cause was tried in a bench trial.

On February 22, 1977, at the close of proofs on behalf of the defendants-counterplaintiffs, Hollands, the plaintiffs-counterdefendants, Harbecks, moved for a judgment under the terms of section 64(3) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 64(3)). On June 7, 1977, an order was entered in this cause by the trial court in the following terms:

> "Ordered, that defendant's motion for a judgment for the Defendant at the close of the Plaintiff's case be and is hereby allowed. [*Sic.*]"

On August 7, 1978, plaintiffs-counterdefendants moved to have the order amended, *nunc pro tunc*, so as to substitute the word "counterdefendants" for the word "defendant" and to substitute the word "counterplaintiffs" for the word "plaintiff". The judge apparently determined that he could not issue a *nunc pro tunc* order for the reason that he had no memorandum of his real intentions. The trial court, instead, issued a new order, effective as of August 10, 1978, vacating the order of June 7 and substituting an order that "counter-defendants' motion for a judgment for the counterdefendant at the close of counterplaintiff's case be and is hereby allowed. [*Sic.*]" The defendants-counterplaintiffs, Hollands, appeal from the order of August 10, 1978, asking the court to vacate that order and reinstate the June 7 order.

The Hollands contend that the order of June 7, 1978, should stand

because the court lost jurisdiction to amend its judgment after the expiration of 30 days. As stated in *Spears v. Spears* (1977), 52 Ill. App. 3d 695, 697, 367 N.E.2d 1004:

> "Generally, a trial court does not have jurisdiction over either the parties or the subject matter so as to permit it to review or modify its own final order or judgment after the expiration of 30 days from rendition, except pursuant to a petition for post-judgment relief under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 72)."

There is no showing that an adequate section 72 petition was submitted to the court by the Harbecks.

■■ It is unquestionable, as noted in *Morrison v. Stewart* (1887), 21 Ill. App. 113, 114, that a trial court, even after the expiration of its term, may amend its order *nunc pro tunc.* Such amended order relates back to the date of the original order, which was issued during the court's term. An order may be amended *nunc pro tunc* in order to rectify a clerical error or an error of form. (*Fox v. Department of Revenue* (1966), 34 Ill. 2d 358, 359, 215 N.E.2d 271.) "Clerical errors or matters of form are those errors, mistakes or omissions which are not the result of the judicial function. Mistakes of the court are not necessarily judicial errors. The distinction between a clerical error and a judicial one does not depend so much upon the source of the error as upon whether it was the deliberate result of judicial reasoning and determination." (*Dauderman v. Dauderman* (1970), 130 Ill. App. 2d 807, 810, 263 N.E.2d 708.) A judge may not amend his judgment *nunc pro tunc* on the basis of memory alone, but must rely upon either a memorandum or otherwise upon a definite and certain record. (*Fox v. Department of Revenue* (1966), 34 Ill. 2d 358, 359, 215 N.E.2d 271; *Dauderman v. Dauderman* (1970), 130 Ill. App. 2d 807, 810, 263 N.E.2d 708.) The record in the instant case indicates that the designation in the original order of "defendant," rather than "counterdefendants," and of "plaintiff," rather than "counterplaintiffs," was a clerical error. The judge, in amending his order, was not correcting an error of deliberate judicial reasoning and determination, but was merely correcting an inadvertent misdesignation of the parties. That it was a clerical error was clear from the context and the nature of the order itself. The error was understandable, in view of the fact that a section 64(3) motion was made by counterdefendants for judgment at the end of counterplaintiffs' proofs.

The factual deviation in this case from the norm, *i.e.*, that the motion was made by the counterdefendants at the close of counterplaintiffs' proofs, easily explains the source of the error inadvertently entered by the trial court.

■■ We conclude that the judge was overly cautious in his determination

that there was an insufficient memorandum to support an amendment *nunc pro tunc.* The minute order of February 22, 1977, indicates that the "plaintiff" moved for judgment after the "defendant-counterplaintiff" rested, and that the judge then recessed proceedings so that the parties could file briefs. No other motion was indicated in the record. On the basis of the record as a whole, therefore, we believe that there was sufficient written basis for the judge to have made his amendment of the clerical error *nunc pro tunc.*

It is apparent, also, that the court had jurisdiction to vacate the June 7 order and issue a new order on August 10, 1978, since both parties had made a general appearance before the court and the court was revested with jurisdiction over the parties, even after the expiration of the term following the passage of 30 days after its initial order. (*Ridgely v. Central Pipe Line Co.* (1951), 409 Ill. 46, 49-50, 97 N.E.2d 817.) When the Harbecks appeared on August 10 at a hearing on their motion for an amendment *nunc pro tunc,* the Hollands also appeared before the court. The Hollands did not, at that time, challenge the court's jurisdiction. The appearance was general and revested the court with jurisdiction to vacate its old order, entered incorrectly, and to issue a new order, consistent with the court's actual determination.

The Hollands appeal from the August 10, 1978, order which denied them the opportunity to reopen their proofs by admitting into evidence the deposition of Ruth Sage. This deposition was taken by the Harbecks on April 21, 1977, some two months after the close of the Hollands' case in chief, to be used in the defense of the counterclaim of the Hollands, in the event that the motion pursuant to section 64(3) would be denied. It turned out that the Sage statement was favorable to the Hollands on the issue of the exclusive possession by the predecessors of the disputed strip. The deposition tended to negate the assertion of one of the witnesses for the Hollands that the disputed land was shared by the possessors of the north and south farms.

■■ The determination whether to reopen proofs after the close of a party's case is left to the sound discretion of the trial court and will not be interfered with on appeal unless there is a clear abuse of such discretion. (*Dean Milk Co. v. City of Elgin* (1950), 405 Ill. 204, 208, 90 N.E.2d 112.) There was no showing that the deposition witness was unavailable to the defendants-counterplaintiffs (Hollands) before, during, or shortly after trial. Given the late date of the Hollands' motion to reopen, particularly in view of the fact that such motion was made after the rendition of judgment, we do not believe that the trial court abused its discretion in denying the motion.

The Hollands also appeal from the August 10 judgment which dismissed their case, and assert that the determination was contrary to the

manifest weight of the evidence. The evidence, when viewed in a light most favorable to the Hollands, shows that they regularly ran their mobile machinery over a dirt track, located somewhere near the north end of their property, possibly to the north of their property of record, from 1951 until 1976. The exact location of this track is uncertain. It is equally uncertain whether this track occupied the same location at all times being considered. The only landmark indicating the location of this track was a gate, some 18 feet wide, which extended north from near a hickory tree (a landmark of the record property line) to near a rock, along the extreme west end of the disputed strip. The Hollands maintain that this gate, the posts supporting it, and the rock marking its north end, were all removed by the Harbecks and that the location of these landmarks should be presumed against the despoiler. (See *Appleton Electric Co. v. Advance United Expressways* (7th Cir. 1974), 494 F.2d 126, 139.) Assuming this assertion to be true, only the extreme west end of the tract was marked. Counterplaintiffs, Hollands, maintain that the land they possessed adversely ran due east from the gate to a clump of willow trees, some 2400 feet to the east. The willow trees, we note, extend well to the south, onto the counterplaintiffs' land of record.

■■ In order to establish a case for adverse possession, the possession must be of a defined tract. The claimant has the burden of establishing, by clear and convincing proof, the location of the boundaries to which he claims adverse possession. The proof must be such as to establish with reasonable certainty the location of the boundaries of the tract and the boundaries must be susceptible to specific and definite location. It is elementary that in any case involving a boundary dispute, the claim of title by adverse possession must be to a visible and ascertainable boundary line. (*Schwartz v. Piper* (1954), 4 Ill. 2d 488, 493, 122 N.E.2d 535.) The Hollands offer no clear and convincing evidence such as to establish with reasonable certainty the location of the dirt track. They maintain that the location of the track is not at issue since it is the same land which the Harbecks claim that the Hollands are now trespassing upon. While the location of the adversely claimed strip and the trespass strip may be congruent at the present time, such an assertion is "bootstrapping" on the issue of the past location of the tract claimed by adverse possession.

■■ Counterplaintiffs argue that even if sufficient landmarks are lacking at the present time, the adversely claimed land was once marked by definite landmarks. Their evidence indicates that a lane, some 20 feet wide and bounded by hedges, ran from the gate on the west to the willow trees on the east. This land ran past the Riggs' house (the predecessors of the Hollands in interest) and served that house as a roadway out to the State highway which runs along the west borders of both of the neighboring

farms. The Hollands argue that this double hedge stood from 1917 until the 1930's and that the northernmost hedge stood until 1951, thereby marking with certainty the northern limit of the lane which they and their predecessors claimed to possess adversely to the interest of the tenants of the north farm. The Hollands, therefore, maintain that the location of the tract which is claimed by adverse possession was established with reasonable certainty from 1917 to 1951, more than the required 20 years (Ill. Rev. Stat. 1977, ch. 83, par. 1). Such argument, however, does not solve the problem of ascertaining with reasonable certainty the boundaries claimed by adverse possession. Again, the court cannot assume, and the record does not establish with reasonable certainty, that the hedges ran due east from the gate. Even if all of the elements of adverse possession existed so as to vest the Hollands with title prior to 1951, the fact remains that they did not seek to quiet title by 1951 or soon enough thereafter that the landmarks or recent memory thereof could establish expressly the limits of their estate with reasonable certainty. Now, over 25 years later, we cannot assert that because the boundaries were once certain, they are certain enough now for the court to find for the party claiming by adverse possession (Hollands). Since, in a claim of adverse possession, all presumptions are in favor of the record owner (*Schwartz v. Piper* (1954), 4 Ill. 2d 488, 493, 122 N.E.2d 535), it was proper for the court not to presume the location of the tract claimed by adverse possession. Consequently, we find that the trial court's dismissal of the counterplaintiffs' counterclaim was not contrary to the manifest weight of the evidence.

For the reasons stated, therefore, the judgment of the Circuit Court of La Salle County is affirmed.

Judgment affirmed.

STENGEL and SCOTT, JJ., concur.