CLARICE HOOS, Petitioner-Appellee, *v.* WILLIAM G. HOOS, Respondent-Appellant.

First District (2nd Division)   No. 79-2225

Opinion filed July 22, 1980.

Dan Walker, Jr., of Oak Brook, for appellant.

W. L. Robinson, of Barrington, for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

This appeal results from a post-divorce order of the circuit court of Cook County which reduced child support arrearages of approximately $12,500 to $5,000. The respondent, William Hoos, who is also the obligor, appealed this reduction, alleging that the court should have allowed application of the doctrine of equitable estoppel to reduce the arrearages even further (to $1,900), and that the court erred in settling the amount of the arrearage at $5000. Since petitioner wife has not participated in this appeal, she has not filed a brief. This court is not obligated to act as an advocate or search the record to affirm the judgment of the trial court. In the interest of justice, however, and because the errors claimed can be easily decided without benefit of appellee's brief, we have examined and weighed the points raised in appellant's brief. (*First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493.) Consequently, although perhaps with a result not intended by the respondent who pursues this appeal, we have determined that the order of the trial court was in error. See *Falk v. Falk* (1979), 77 Ill. App. 3d 13, 16, 395 N.E.2d 750.

In November 1974, a divorce was granted Clarice (petitioner) and William (respondent) Hoos. As a part of the divorce an agreed settlement was entered which contained, among other provisions, a stipulation that respondent should pay petitioner $550 a month child support. In conjunction with this allowance, the agreement also provided that: "Should the wife obtain full time employment and net $100 weekly or more, then the Husband and Wife agree to renegotiate the support payments."

In March 1979, petitioner applied to the court for an increase in child support and for extraordinary dental needs of the child; she also requested a rule to show cause be issued against respondent and attorney's fees. She alleged child support arrearages of over $11,500. Respondent countered with a petition for various forms of relief,

including a confirmation by the court that under "the agreement of the parties [respondent] is paying the sum of $250 per month for child support." Petitioner replied that the sum of $250 was determined unilaterally by respondent. She stated that her acceptance of checks in that sum did not constitute a binding renegotiation of the court-approved child-support agreement.

In May 1979, a hearing was held on the amount of arrearages. Respondent testified that at the time of the divorce, he was earning $14,500 a year and was ordered by the trial court to pay $550 a month for the support of his two minor children. His pay at the time of the May 1979 hearing had increased to $19,500 with approximately $1200 a year overtime. He also stated that his bills averaged $1500 a month. Respondent then detailed the occasions of "renegotiation" of child support which he alleged to have taken place during the five-year period following the divorce. Although the record as a whole is unclear on the actual arrearage, respondent asserted renegotiation and reduction of payments as follows:

| January 1975: | Decrease to $500 |
| March 1975: | Decrease to $470 |
| May or June 1976: | Decrease to $400 |
| May 1977: | Unable to agree—he began to pay $200 less; she remarried |
| July or August 1977: | He agreed to raise it to $250 |

In December 1978, respondent stopped payments altogether, instead depositing $250 a month for his children in the credit union. The pleadings and later testimony indicate that respondent's action was related to a visitation dispute and to his objections to petitioner's holding child-support checks in a reserve account for future benefit of the children. Respondent affirmed that a total of $1500 was being withheld in the credit union account. During cross-examination, respondent stated that the reductions were based on petitioner's income. He also admitted that most of the conversations regarding reductions took place on the telephone and were never reduced to writing or presented to the court. Respondent, in later testimony, added that he had received additional income from sources other than his main employment.

Petitioner testified that she had requested the support payments but that her husband had refused to pay arrearages, which, according to her monthly records, amounted to $12,910. She stated that the "agreements" that her husband had testified to were really conversations, often ending in rancor, during which he told her how much he intended to pay. She added that at the time of the final child support reduction (to $250 a month), she had no outside income.

On cross-examination, petitioner stated that she did not have income of over $100 a week until August of 1975. Moreover, when she remarried

in June 1977, respondent stopped payments completely, and according to her testimony, stated "Well, you're married again." He then paid $200 monthly and in September 1977, began the $250 payments.

By the time of a subsequent hearing, several of the less disputed matters had been settled but the issues of arrearages and of child support increases remained. In response to questions by the trial court, petitioner stated that the only reduction to which she agreed was the first one in January 1975, and that one was only to be for one month. When she objected to a further reduction to $470, protesting that she was not earning $100 a week as per the reduction clause in the divorce decree, respondent allegedly stated that $470 was "better than not getting anything." Similarly, her version of the eventual reduction to $250 was that she was told she could either take it or leave it. Petitioner testified that she told respondent at the time that $250 per month amounted to less than 50% of the children's support and that if he persisted in those payments she would begin to take the tax deduction accorded respondent by the divorce decree.

The trial court noted, prior to announcing its determination of the arrearages, that "there is really not very much to go on, just a bunch of alleged oral agreements"; and, "I cannot see where there was any consideration for her accepting the two hundred and fifty dollars. So, it seems it was a unilateral decision of Mr. Hoos, but still, she did accept it for a long time without doing anything about it." The court also commented: "This is a court of equity and I have to give some credence to the fact that it might have been an oral agreement. You have given me nothing to go on, so, I will split the difference and find that the arrearage is $6,190 and in the interim the $550 order is still in full force and effect. I was going to split the difference, but since she accepted I added $2000 to the minimum." When respondent's attorney objected to this settlement, the court remarked, "I thought you agreed * * *." The attorney, however, denied an agreement and restated his contention that the arrearages should be $150 plus the escrow of $1750 for a total of $1900.

The court then announced the arrearage as $5000 and stated that until the next hearing (a transcript of which does not appear in the record) the monthly support would be reduced to $250.

Respondent's petition for reconsideration was denied by the trial court and notice of appeal was filed. The notice of appeal requested "reversal of that part of the order of June 14, 1979 and August 2, 1979, setting the arrearage of Defendant-Petitioner at $5000 or in the alternative * * * that the Appellate Court vacate said orders and remand for a new hearing."

Respondent has raised two defenses which he contends should operate to bar or reduce the trial court's award of child-support

arrearages. He first claims, as he did in the trial court, that he and his ex-wife made binding agreements to reduce the child-support payments. He maintains that the fact that these agreements were made is proven by petitioner's acquiescence in the reductions and by respondent's testimony at trial. His second contention is that the doctrine of equitable estoppel should govern to reduce the arrearages.

■■ ■ It is a well-established rule that past-due installments of child support are the vested right of the designated recipient and are not subject to reduction either as to amount or time of payment. (*E.g., Pickell v. Pickell* (1979), 76 Ill. App. 3d 855, 858, 395 N.E.2d 673; *Dunsky v. Dunsky* (1976), 40 Ill. App. 3d 845, 848, 353 N.E.2d 371.) Further, child-support payments cannot be terminated unilaterally, for the decree is a continuing order to which the obligor remains subject despite his own determination of when and why he should modify payments. (*Wilson v. Wilson* (1970), 122 Ill. App. 2d 142, 148, 257 N.E.2d 810.) Thus change in circumstances alone is insufficient for unilateral termination or reduction of child-support payments. The modification of child-support payments is a judicial function, administered by the court prospectively and at its discretion. *Jozwick v. Jozwick* (1979), 72 Ill. App. 3d 17, 20, 390 N.E.2d 488.

■■ In the proper case, however, courts have given effect to either an agreement between the parties or the doctrine of equitable estoppel to reduce the amount of child-support arrearages. (*In re Estate of Neirinck* (1978), 62 Ill. App. 3d 189, 192, 379 N.E.2d 356; *Ellingwood v. Ellingwood* (1975), 25 Ill. App. 3d 587, 591, 323 N.E.2d 571.) Since these two defenses act as a bar to an otherwise inflexible rule, either estoppel or waiver by agreement must be proved by clear and unequivocal evidence. (*Slavis v. Slavis* (1973), 12 Ill. App. 3d 467, 474, 299 N.E.2d 413; *Ellingwood v. Ellingwood* (1975), 25 Ill. App. 3d 587, 593, 323 N.E.2d 571.) Accordingly, to prevail in this appeal respondent must have established either the oral agreement or equitable estoppel by clear, unequivocal evidence in the trial court.[1]

■■ Respondent's first contention, that his testimony and petitioner's conduct established the existence of a binding reduction agreement, is unsupported by the evidence. At best, his testimony, contradicted as it was by petitioner, created a credibility issue. Petitioner's monthly recording in her diary of arrearages would appear to belie respondent's assertions that his ex-wife had knowingly waived her right to pursue the arrearages and had agreed to binding reductions. Further, the comments of the trial court on the weight of the evidence indicate that it believed

---

[1] We note that the trial court apparently misconstrued the requisite standard of proof when it stated that as a court of equity it had "to give some credence to the fact that it might have been an oral agreement."

that respondent's reductions were unilateral.[2] The conflicting testimony and the lack of any written manifestation of the purported agreement apparently led to the trial court's doubt concerning the existence of an enforceable, bilateral agreement to reduce the child-support payments for $550 to the eventual $250. In any event, the evidence is woefully short of satisfying the required clear and unequivocal evidentiary standard. Thus, absent a clear demonstration that there was an enforceable agreement by petitioner, the trial court erred in reducing the arrearages on the basis of a disputed agreement.

Even in the absence of an enforceable agreement, however, respondent contends that the doctrine of equitable estoppel should operate to mitigate all or part of the past-due installments. (See *Anderson v. Anderson* (1964), 48 Ill. App. 2d 140, 147, 198 N.E.2d 342.) Respondent did not raise estoppel as an equitable defense in the trial court. Rather, he relied on the above discussed defense of "agreement." Only petitioner's attorney mentioned estoppel, and that reference arose in a different context. While failure to raise an issue below would normally mandate its dismissal on appeal (*In re Estate of Leichtenberg* (1956), 7 Ill. 2d 545, 548, 131 N.E.2d 487), we believe that our disposition of this appeal necessitates brief consideration of appellant's contention.[3]

Equitable estoppel is defined as:

"[W]here a party by his statements or conduct leads another to do something he would not have done but for the statements or conduct of the other, the one guilty of the expressions or conduct will not be allowed to deny his utterances or acts to the loss or damage of the other party. The party claiming the estoppel must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the true facts." (*Dill v. Widman* (1952), 413 Ill. 448, 455-56, 109 N.E.2d 765, cited with approval in *Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 447, 220 N.E.2d 415, *cert. denied* (1967), 386 U.S. 1000, 18 L. Ed. 2d 353, 87 S. Ct. 1302.)

---

[2] See the comments of the trial court set out above, alluding to the lack of consideration, the "alleged oral agreements," and the "unilateral decision of Mr. Hoos."

[3] In *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147-48, 324 N.E.2d 417, our supreme court commented that while an appellant's scope of review is limited by his assignment of errors, the trial court's finding in favor of the appellee may be sustained on any basis for which factual support appears in the record. (See also *Leichtenberg*, 7 Ill. 2d 545, 549.) This rule acts as a corollary to the maxims that the reviewing court may search the record to affirm and may sustain the trial court's result on any appropriate ground.

In the instant case, respondent seeks a reversal of the trial court's order. It may well be however, that reversal would act to his detriment since if remanded for rehearing his arrearage liability could be increased. Thus he should be given the same opportunity to present a theory which might act to sustain the trial court's decision as would in the more typical case be given appellee.

Thus estoppel arises where the voluntary conduct of one party results in good faith reliance and detrimental change of position by the other party. Where such circumstances exist, estoppel may act to bar the assertion of rights by the party whose voluntary acts led to the reliance. See *Bartlett v. Bartlett* (1979), 70 Ill. App. 3d 661, 389 N.E.2d 15 (petitioner promised respondent that if he stopped exercising visitation privileges, she would not demand future child support; when she later demanded past payments, held barred by equitable estoppel).

■ The test of equitable estoppel in the child-support context generally focuses on conduct of the petitioner and change of position by respondent. (See *Martin v. Comer* (1975), 25 Ill. App. 3d 1038, 1041, 324 N.E.2d 240.) In the instant case the element of voluntary conduct on petitioner's part is at best disputed. Petitioner contended in the trial court that she objected to the amount of the payments, only acquiescing when she was informed by respondent that it was the most she would receive. Acquiescence or even silence is not a *de facto* approval of the reductions. Further, respondent's reliance on such acquiescence would not constitute a detrimental change of position. *Finley v. Finley* (1979), 75 Ill. App. 3d 89, 95, 393 N.E.2d 1060; *Ellingwood*, 25 Ill. App. 3d 587, 591; compare *Jozwick*, 72 Ill. App. 3d 17, 22 (estoppel cannot be based on failure to demand nor on passage of time) with *Wolfe v. Wolfe* (1940), 303 Ill. App. 188, 190, 24 N.E.2d 871 (a reduction of $2.50 per week constituted agreement if accepted for five years without complaint).

■■ In practice, those cases which have found a change of position for the worse have involved rather egregious circumstances where the respondent has acted in good faith and the petitioner has received an unwarranted benefit. (See *Anderson*, 48 Ill. App. 2d 140, 142-44 (husband signed release for adoption form for his child in return for release from child-support payments); *Martin v. Comer*, 25 Ill. App. 3d 1038, 1040 (husband would pay ex-wife's hospital bill for unborn child who allegedly was by another man in return for release); *Strum v. Strum* (1974), 22 Ill. App. 3d 147, 149-50, 317 N.E.2d 59 (child living with noncustodial parent while custodial parent trying to get child support).) In the case at bar, respondent bases claims of detriment on the fact that he would have to pay the accumulated arrearage in one lump sum at a time when he had increased his personal expenses, and presumably his standard of living, in reliance on the lower support payments. This reliance does not constitute a change of position for the worse. (See also *Finley*, 75 Ill. App. 3d 89, 95.) We also acknowledge that where a father has absconded or refused to make child support payments (as in the case at bar), his conduct precludes an application of equitable estoppel. (*In re Estate of Neirinck* (1978), 62 Ill. App. 3d 189.) We must repeat that respondent's proper course for the reduction of future child support was by way of the courts

and not his own unilateral action. See *Matzen v. Matzen* (1979), 69 Ill. App. 3d 69, 72, 387 N.E.2d 14.

In consideration of the foregoing, this case is remanded to the trial court with directions to vacate the order and to recompute defendant's arrearages.

Reversed and remanded.

DOWNING and HARTMAN, JJ., concur.