*In re* MARRIAGE OF MAE JEAN McDAVID, Plaintiff-Appellant, and RALPH E. McDAVID, Defendant-Appellee.

First District (5th Division) No. 70-979

Opinion filed June 26, 1981.

Beth A. Lehman, of Lehman & Schub, of Chicago, for appellant.

Gorman & Gorman, of Chicago, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

This is an appeal by plaintiff from an order in a post-divorce decree proceeding reducing child-support payments *nunc pro tunc*. On appeal, plaintiff contends that: (1) the court erred in reducing child support payments *nunc pro tunc* to June 1, 1975, when a later order specifically limited the retroactivity to December 1, 1976; (2) the reduction in child-support payments and the denial of her petition for attorney's fees was

contrary to the manifest weight of the evidence; and (3) attorney fees should be awarded for defending post-decree actions and the appeal.

The record reflects that a 1970 divorce decree required defendant to make child-support payments to plaintiff amounting to $25 per week for their two-year-old child. Defendant was a student at that time and shortly thereafter received a masters degree. He also later obtained employment as an instructor at De Vry Technical Institute.

In August 1971, plaintiff filed a petition for a rule to show cause alleging that defendant was $925 in arrears on the $25-per-week child-support payments. The petition further alleged that defendant's salary was approximately $10,000 per year. The court ordered that the arrearage be reduced by a payment of an additional $25 per week, making defendant responsible for a total payment of $50 weekly.

In June 1974, plaintiff petitioned the court for an increase in child-support payments, alleging that defendant's gross income had increased to $16,000 annually. The petition was granted, and the basic support order was increased to $50 per week; defendant was ordered to pay accrued medical expenses; and plaintiff was permitted to move with the child to the State of Alabama.

On December 24, 1974, plaintiff again filed a petition for a rule to show cause alleging that defendant was in arrears in the payment of child support. After the hearing on the petition on January 17, 1975, the court found defendant in contempt for failure to pay $555. This amount was paid in open court and the matter was continued to March 18, 1975. On that date, defendant was granted leave to enter his petition for an order suspending child support payments. He alleged that on September 17, 1974, his employment at Advance Schools, where he had been earning $16,000 per year, had been terminated due to a lay-off and he was unemployed for three weeks. He then obtained employment at Bell & Howell Schools, but was involuntarily laid off from that job on February 7, 1975, and his income was reduced to zero.

At the brief hearing on the petition, the court refused to reduce or suspend the child support payments. Instead, the court ordered that the $50 per week would continue to accrue, but that during defendant's unemployment and until he received either unemployment compensation or employment income, no rule to show cause would be entered against him for nonpayment. The court further ordered that defendant pay $20 per week against the arrearage during the period he was receiving unemployment compensation (the remaining $30 to accure) and that, when he became employed, he notify plaintiff's attorney and a "suitable order on his petition may be entered nunc pro tunc." The order also declared defendant to be current on his child support payments through March 14, 1975.

On October 13, 1976, plaintiff was granted leave to file another petition for a rule to show cause against defendant for nonpayment. At the hearing of this petition on December 1, 1976, defendant's attorney filed an answer alleging that the March 18, 1975, order modified the child support payments, and he was not receiving either unemployment compensation payments or employment income. Additionally, defendant filed his second petition for reduction in child-support payments. The petition alleged that he had been unable to find teaching employment; that he had been devoting his time to his son by a previous marriage, who had a mental condition; that $50 per week was greatly beyond his present earning capacity; and that he believed that plaintiff's income was in excess of $10,000 annually.

At the hearing on the petition, the court's comments disclose that the court considered the March 18, 1975, order and interpreted it to mean that $50 per week had accrued from March 1975 to December 1, 1976. Defendant's attorney, who had also represented him at the March 18, 1975, hearing, requested Judge William E. Peterson to find that December 1, 1976, would be the effective *"nunc pro tunc"* date for purposes of determining the starting date for any reduction the court might find defendant entitled to should he prove his petition. The court then ordered that should defendant's petition for reduction "be found to be true, any order shall be nunc pro tunc to December 1, 1976."

On June 14, 1977, the cause was transferred to Judge John J. Crown, and the court conducted a hearing on still another of plaintiff's petitions for a rule to show cause. The court, after being apprised of prior orders entered in the matter, indicated that it agreed that the December 1, 1976, order was the proper effective date for the entry of any retroactive support reductions. The court stated:

> " 'Should the respondent's petition for reduction of child support based on the loss of employment be found true, any order shall be nunc pro tunc to 12-1-76.' It is very clear. Up to 12-1-76 the fifty dollars accrues. He pays the twenty dollars. He is accruing thirty dollars arrearage after December first if the employment situation is as counsel represents. Whatever order is entered today goes back to December 1, 1978, and if the arrearage of thirty dollars would be wiped out if an order of less than fifty would be found."

During this hearing, the parties on June 15, 1977, entered into an agreed order in which a judgment of $3,000 was entered against defendant and he agreed to pay this arrearage judgment over a period of time. This agreed order, however, was later vacated by the court pursuant to plaintiff's petition to vacate which alleged that defendant had misrepresented his income.

Thereafter, on November 14, 15, and 16, 1978, defendant's petition to reduce child support was heard along with plaintiff's petition for a rule to show cause which sought, among other things, a determination of the amount of arrearage due and attorney's fees. Plaintiff again was represented by new counsel, Peter V. Solber.[1] Prior to hearing evidence on the petitions, both parties' attorneys informed the court that the starting point for a determination of the matter of child-support reduction or child-support arrearages was the March 18, 1975, order. It also appears that the court had a copy of a petition for reduction of child support filed December 1, 1976, but the record does not indicate whether, at that time, the court was aware of the December 1, 1976, order.

At the hearing, defendant testified as to his income, as established by his tax returns. He stated that his income was $14,345 in 1974, $3,566 in 1975, reduced to an "adjusted gross" income of $929.22 in 1976, a loss of $164, $2,490 in 1977, and in 1978, up to the date of the hearing, slightly more than $3,000. The tax returns were introduced into evidence after cross-examination was completed. Defendant also testified that a list of his debts totalling $19,000 was correct and that his living expenses were approximately $417 per month. This list was later introduced into evidence. Defendant stated that his other son, Charles, had been in mental institutions five times and was currently suffering from mental incapacity. Thus, defendant found it necessary to assist his son with medical expenses, spending approximately $1,500 in 1977 and over $500 in 1978 up to the date of the hearing. He further testified that his position as a teacher at Bell & Howell had terminated March 1, 1975; he received unemployment compensation of $135 per week and paid child support during this period; he was unemployed for six months and, after the unemployment compensation checks terminated, he had no income and stopped his child support payments; he then started working as a handyman at Armitage Hardware and was still working in that capacity.

Defendant also stated that in May 1975, he purchased a one-half interest in two buildings for a price of $2. At the time of his purchase, the buildings had 75 violations pending in Building Court and all of the rents collected from the buildings from 1975 to the present had been used to pay bills on the buildings and correct violations. However, approximately 50 of the violations still existed. He testified further that the two buildings contains four apartments in the rear and five in the front, the gross rent was $685 monthly, and the gross adjusted income in 1975 was $929.22.

On cross-examination, defendant testified as to the exact amount of

---

[1] Robert J. Gorman, defendant's attorney, alleged that Peter V. Solber was the fifth attorney to represent plaintiff. Later, several other attorneys represented plaintiff. Defendant also employed more than one attorney.

rent obtained from each room or apartment. The amount totalled $834.80. It was collected in cash by Herman Evans, who lives in one of the buildings without charge and who gives the tenants receipts for the rent collected. Further, defendant stated that he received $6,500 during 1978 from Armitage Hardware for work as a handyman, and borrowed $4,000 from an aunt.

During redirect examination, defendant explained that the $6,500 he received from Armitage Hardware was a gross figure and that his original testimony that his 1978 income was approximately $3,000 was a net figure.

On section 60 (Ill. Rev. Stat. 1977, ch. 110, par. 60) examination of defendant, the parties stipulated that in 1975 defendant had bank deposits of $16,988.47 and reported income of $13,741; in 1976, he had deposits of $27,102.21 and reported income of $16,065; and in 1977, for the first six months, he had deposits of $13,779.07 and reported income of $14,935 for the entire year.

During redirect, he stated that the discrepancies could be accounted for on the basis that he deposited $5,300 per year in his accounts, which was received from the Veterans Administration on behalf of his son, Charles, as well as checks from his girlfriend Mary, and money borrowed from Baker, his partner in the buildings.

Plaintiff testified she owned a six-flat building with rentals totalling $2,125 monthly, or $25,500 yearly. She purchased the building in 1976 for $59,000 after making a $39,000 downpayment. Her mortgage, including taxes, is approximately $500 per month, the fuel bill is $3,000 to $4,000 yearly, the scavenger bill is $74 monthly, and the water bill is approximately $30 monthly. Her 1977 income tax return disclosed that in 1976 and 1977 she spent the sum of $77,849,83 in improvements to the building.

Plaintiff further testified that she does not live in her building but resides in an apartment where she pays $410 per month rent. Additionally, she receives social security in the amount of $253.90 monthly and the son, Bryan, receives $131.20 in social security. After the divorce from defendant, she remarried and was again divorced, receiving a $3,000 settlement in 1976. She claimed a yearly expense for Bryan in the amount of $6,208.26 and a total expense for the two of them in the amount of $12,709.

Following the hearing of December 7, 1978, the trial court entered an order of $20 per week child support *nunc pro tunc* to June 1, 1975, credited defendant with child support payments in the sum of $910 in excess of the child support due, directed that the overpayment be adjusted by deducting $5 per week from future child support payments, and denied plaintiff's petition for attorney's fees.

Plaintiff filed a petition for rehearing to modify the December 7, 1978, order. The trial judge stated, when given a copy of the December 1,

1976, order: "Now this arrearage question was never brought to my attention. * * * Let me look at my notes. * * * I am finding some notes. I am sorry I didn't look at all of these notes."

After plaintiff's counsel argued that December 1, 1976, should have been the *nunc pro tunc* date for reduction of defendant's support obligations, the trial judge refused to reconsider his order, stating: "That is what I ruled. I may be wrong but that is what I ruled." Following further argument by counsel, the court declared that "this case has received all the consideration a trial court should give it. If the court erred, I think it is a matter for the appellate court to review and change." The petition for rehearing was then denied by the trial court and notice of appeal was filed. The notice of appeal requested "reversal of the order of December 7, 1978, granting modification of child support payments and denying attorney's fees and the order of March 29, 1979, denying plaintiff a rehearing and modification of the December 7, 1978, order, or in the alternative, that these orders be reversed and that this cause be remanded for a rehearing."

OPINION

Plaintiff first contends that the court erred in reducing child support payments *nunc pro tunc* to June 1, 1975. We agree that the reduction to that date was improper.

■■ It is a general principle that past-due installments of child support are the vested right of the designated recipient and cannot be terminated by the defendant (*Matzen v. Matzen* (1979), 69 Ill. App. 3d 69, 387 N.E.2d 14), and neither can they be modified as to amount or time of payment. *Hoos v. Hoos* (1980), 86 Ill. App. 3d 817, 408 N.E.2d 752.

In an appropriate case, however, courts will give effect to either an agreement between the parties or to the doctrine of equitable estoppel to reduce the amount of child-support arrearages. *E.g., Hoos*, 86 Ill. App. 3d 817, 821, 408 N.E.2d 752, 756; *Jozwick v. Jozwick* (1979), 72 Ill. App. 3d 17, 390 N.E.2d 488; *McAdams v. Scullin* (1977), 53 Ill. App. 3d 374, 368 N.E.2d 1036.

■■ Equitable estoppel arises where the voluntary conduct of one party precludes that party from asserting rights against another person who has, in good faith, relied upon such conduct to change his position for the worse. *McAdams*, 53 Ill. App. 3d 374, 377, 368 N.E.2d 1036, 1038.

■■ Furthermore, as stated in *In re Marriage of Junge* (1974), 73 Ill. App. 3d 767, 392 N.E.2d 313, there is no vested right to child-support payments accruing after a petition for modification is filed.

In the present case, there is no contention by defendant that there was an agreement between the parties to reduce child-support payments or that he relied, to his detriment, upon any apparent willingness of

plaintiff to accept less child support. Consequently, these defenses are not available to defendant.

■■ Both parties agree that a court may, within its discretion, modify a support order retroactively to the date that the petition for modification was filed and, thus, child support payments in arrears which accrue thereafter do not become vested.

In support of her contention that the court not only improperly reduced her child support but erroneously modified it, effective June 1, 1975, plaintiff points out that defendant filed two separate petitions for modification of the child support order. The first petition was filed on March 18, 1975, and the second on December 1, 1976. Both petitions were ruled upon by the trial court. In the court's written order pursuant to the hearing on the March 18, 1975, petition, the court ordered that defendant was to pay $20 per week on the $50 per week child support order (the remaining $30 to accrue), and that when defendant became employed he was to notify plaintiff's attorney "and a suitable order on his petition may be entered nunc pro tunc."

From March 1975 to December 1976, the record reveals that defendant made some child support payments but did not notify plaintiff of any employment, nor did he pursue his petition for support modification. Defendant's second petition for modification was filed in December 1976 and a hearing was conducted on both plaintiff's petition for a rule to show cause and defendant's petition for modification, and the court concluded by written order. The pertinent part follows:

"* * * That should respondent's petition for reduction of child support based on loss of employment should be found to be true any order shall be nunc pro tunc to 12-1-76. * * *"

■■■ Thus, the record discloses two *"nunc pro tunc"* orders in conflict with one another. Although we are not presented with the issue of whether the court's use of the term *"nunc pro tunc"* in its March 1975 and December 1976 orders was correct, we note that although a trial court retains jurisdiction to enter a *nunc pro tunc* order correcting a final order or judgment even after the expiration of the term in which a judgment was entered, the correction must be based on some note, memorandum or memorial paper or record of the court, and it cannot be based on recollection alone. (*Kooyenga v. Hertz Equipment Rentals, Inc.* (1979), 79 Ill. App. 3d 1051, 399 N.E.2d 216.) Furthermore, this "power is limited to entering into the record something which was actually done; it may not be used to supply omitted judicial action, to correct judicial error, or to cure a jurisdictional defect." *In re Marriage of Gingras* (1980), 86 Ill. App. 3d 14, 16, 407 N.E.2d 788, 791; see *Harbeck v. Holland* (1980), 81 Ill. App. 3d 250, 401 N.E.2d 9.

In the pending case, no clerical error was being corrected, but it is

apparent that the purpose for the court's use of the phrase *"nunc pro tunc"* in its orders was to enable it to give effect to a possible reduction retroactive to the date defendant filed his modification petitions. We also point out that in both the March 1975 and December 1976 orders, defendant's attorney requested that the court include the *"nunc pro tunc"* references.

We therefore conclude, although we concur with the modification of child support, that the reduction should have been made effective December 1, 1976, the day of the ruling on defendant's second modification petition.

Defendant asserts that the trial court correctly reduced the child support *nunc pro tunc* to June 1, 1975, because plaintiff took the position that child support should be retroactive to March 18, 1975, until the trial court entered its order. Then plaintiff changed her legal theory and argued that the support order should be retroactive pursuant to the December 1, 1976, *nunc pro tunc* order. Defendant posits that plaintiff should be equitably estopped from advancing inconsistent legal theories. In support of this contention, defendant refers us to *Schmidt v. Cenacle Convent* (1967), 86 Ill. App. 2d 150, 229 N.E.2d 413, and *Ellison v. Ward* (1937), 290 Ill. App. 529, 8 N.E. 951. A reading of these cases discloses that they do not support his position because they are distinguishable on their facts. In *Schmidt*, after a jury returned a verdict and the court entered judgment for plaintiff, on plaintiff's motion the court allowed plaintiff to submit a written judgment which was mailed to the court and entered approximately one week later. Defendant accepted that date as the date of judgment, and plaintiff was estopped from claiming the date of the jury verdict and original judgment as the effective date of judgment, and thereby estopped from attacking defendant's notice of appeal as untimely because it was filed more than 30 days after the original judgment.

In the present case, it was because of defendant's actions that the March 18, 1975, *nunc pro tunc* order was entered and, at his specific request, that the December 1, 1976, *nunc pro tunc* order was entered pursuant to the March 18, 1975, order. Thus, it is apparent that it is defendant who has taken an inconsistent position.

In the *Ellison* case, defendant objected to the report of proceedings because it did not include certain additional days of transcript. He then filed a motion to dismiss plaintiff's appeal for failure to file the record within the time limit. He was estopped from asserting this claim because the delay was caused by defendant's demand for additional transcripts. In the instant case, plaintiff's conduct did not cause defendant to commit any irregularity in judicial procedure.

Moreover, on June 14, 1977, the trial court concluded that the

December 1, 1976, order was the effective date for any retroactive modification, stating that should defendant's petition for reduction of child support based on loss of employment be proved, "any order shall be *nunc pro tunc* to 12-1-76. It is very clear. Up to 12-1-76 the fifty dollars accrues. * * *"

Additionally, in ruling on the petition for rehearing to vacate the order reducing child support, the court commented that the arrearage question was not brought to its attention. Plaintiff's attorney then argued that the December 1976 order should control, but the court, after admitting that confusion and conflict existed among the orders, refused to reconsider its December 1978 order.

Accordingly, we hold that the $50 per week order vested up to December 1, 1976, and the court had authority to modify the support order retroactively to that date. Furthermore, we think that in specifically requesting this retroactive date, defendant waived the earlier March 1975 retroactive date.

■■■ The next issue to be considered is the propriety of the reduction in child support and the denial of plaintiff's petition for attorney's fees at that time. Plaintiff argues that the trial court's holding was against the manifest weight of the evidence. We find this argument unpersuasive. Furthermore, plaintiff's attorney, during oral argument, waived this issue. We, therefore, need not address the question. However, even assuming the issue had not been waived, section 510 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 510) provides that a trial court may modify child support provisions previously ordered upon a showing of a "substantial change in circumstances." Thus, the new act did not change the principles applicable under section 18 of the prior divorce act (Ill. Rev. Stat. 1975, ch. 40, par. 19) that a trial court may, on application, terminate or make such alterations in the allowance of child support, as shall appear reasonable and proper (*Kelleher v. Kelleher* (1966), 67 Ill. App. 2d 410, 214 N.E.2d 139) and the burden of proof is on the person seeking modification to show such material change in circumstances as would warrant modification. (*Dixon v. Dixon* (1977), 45 Ill. App. 3d 934, 360 N.E.2d 486.) We believe that defendant met his burden. There is ample evidence in the record to sustain the finding of the trial judge that the weekly child support payment should be $20 instead of $50. Included in the evidence from which the trial court could conclude that the defendant's financial circumstances declined is: (1) In 1974 he was employed by Bell & Howell and, in accordance with his tax return, his income was $14,345; (2) on February 7, 1975, his job was terminated and he became unemployed, receiving unemployment compensation from that time until July 1976; (3) in 1975 his tax return revealed income of

$3,566, in 1976 a deficit, in 1977, $2,490, and in 1978 to the date of the hearing, his income amounted to $3,000; (4) his debts totalled $19,000; and (5) he contributed to a retarded 32-year-old son.

Further, the evidence disclosed that plaintiff received social security income for herself and the minor child of the parties, amounting to $385 per month, owned a six-flat building with gross rental income of $2,125 per month or $25,500 per year and net rental income of $12,515. Additionally, plaintiff's contention that defendant's continued unemployment as a teacher and his inability to make the $50 per week child support payment was not in good faith is without merit. No evidence of bad faith or malingering appears in the record. See *Glass v. Peitchel* (1978), 63 Ill. App. 3d 57, 380 N.E.2d 420.

It is the trial court that observes and hears the witnesses and analyzes the testimony, and it is not for this court to substitute its findings for those of the trial court unless such findings are clearly erroneous and against the manifest weight of the evidence. (*Lewis v. Lewis* (1970), 120 Ill. App. 2d 263, 256 N.E.2d 660.) In this case, we would not be inclined to substitute our conclusion for that of the trial judge.

Finally, both plaintiff and defendant claim that they should be awarded attorney's fees. Section 508(a) of the Marriage and Dissolution of Marriage Act does allow for an award of attorney's fees made in connection with the defense of post-decree activities or appeal. This section provides:

> "The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order either spouse to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred by the other spouse, which award shall be made in connection with the following: * * * (3) The defense of an appeal of any order or judgment under this Act, including the defense of appeals of post-judgment orders." Ill. Rev. Stat. 1979, ch. 40, par. 508(a).

The trial court has heard no petition of either party seeking an award of attorney's fees and none is pending here, but neither party is foreclosed from application for attorney's fees. We think that the trial court should have an opportunity to consider both the granting and the amount of any award. *In re Marriage of Wright* (1980), 92 Ill. App. 3d 708, 713, 415 N.E.2d 1196, 1201, approves the remedy of petitioning the trial court for an allowance of attorney's fees and costs at the conclusion of the appeal.

In consideration of the foregoing, the order of the trial court reducing the child support order is affirmed. The order modifying child support *nunc pro tunc* to June 1, 1975, is vacated and the matter is remanded with directions to enter the order reducing child support retroactively to

December 1, 1976, recompute the arrearage due consistent with the content of this opinion, and to conduct a hearing on the question of attorney's fees.

Affirmed in part; vacated in part; and remanded with directions.

SULLIVAN, P. J., and LORENZ, J., concur.