*In re* MARRIAGE OF LINDA LOU SHELTON, Petitioner-Appellant, and SAMUEL EDWIN SHELTON, Respondent-Appellee.

Fifth District   No. 5—83—0660

Opinion filed August 23, 1984.

776

James W. Sanders and Associates, of Marion, for appellant.

Edward J. Kionka, of Kionka and Associates, of Murphysboro, for appellee.

PRESIDING JUSTICE WELCH delivered the opinion of the court:

At dispute in this appeal is whether petitioner Linda Lou Shelton receives 3.5 acres of land or is awarded its cash value of $3,185. The circuit court of Williamson County modified its judgment disposing of the property of the petitioner and respondent Samuel Edwin Shelton, and, as a result of that modification, she received the cash value of that land. We hold that the court was empowered to make that modification.

The original judgment of dissolution in this case, incorporating a settlement agreement entered into by the parties, was filed on April 28, 1978. Among other matters, it divided the parties' marital property, including a tract of approximately 31 acres of rural Williamson County land. The judgment stated that

> "[t]he petitioner shall have as her sole and exclusive real property the house and ten (10) acres of land contiguous to that house to include the garage building, but not the barn building or the lake, located in the Northwest Quarter of Section 36, Township 8 South, Range Two East of the Third Principal Meridian, Williamson County, Illinois. The respondent shall have as his sole and exclusive real property the balance of twenty-one (21) acres, including the barn and the lake, located in the aforedescribed tract."

That tract, which is intersected by Interstate Highway 57, is represented by the diagram reproduced below.

On October 3, 1979, the petitioner filed a petition for rule to show cause, alleging that the respondent had not yet conveyed to her any of that land. The respondent admitted that this was true but contended, in his response, that the parties had been mistaken as to the dimensions of the land surrounding the house and garage. As he stated in his petition to modify the judgment, filed November 1, 1979, he and his counsel had assumed with the petitioner and her counsel that the house and garage were located on an approximately symmetrical 10 acres of land, "more or less in a square shape." In that petition, the respondent sought to modify the judgment to grant the petitioner the house, garage and 6.5 acres of land contiguous to the buildings. That land is identified as Tract A in the diagram.

The petitioner denied that 10 acres of land do not adjoin the house and that she was mistaken about the dimensions of the land. A hearing on the respondent's petition to modify was scheduled for March 7, 1980. At that hearing, surveyor Michael Wyant recalled that the respondent asked him to survey the 31-acre tract. The respondent instructed him to divide from the tract 10 acres, including the house and garage, but excluding the lake and barn. Wyant explained that he and the respondent intended to create a roughly rectangular 10-acre tract. Upon surveying the land, he discovered that the largest possible roughly rectangular lot he could establish would be Tract A.

The petitioner testified that when she negotiated the settlement agreement with the respondent, she did not know what the 10-acre tract awarded to her would look like. She denied assuming that it would be rectangular, and indicated that she did not care about the shape, as long as she received 10 acres. Following the petitioner's testimony, the respondent's attorney offered in open court a quitclaim deed to the petitioner from the respondent covering "ten contiguous acres in accordance with *** that divorce decree." His offer did not specify which land would be conveyed, as the surveyor had left the courthouse. Pending possible acceptance of that offer, the court recessed the hearing.

Four days later, the petitioner moved to reconvene the hearing. In her motion, she alleged that the respondent had tendered a quitclaim deed to her, but the 10 acres conveyed, consisting of the 5.81-acre portion of Tract A known as Parcel 1, the 2.56-acre Tract C and the 1.63-acre Tract D, were not contiguous. Presumably, the house is located on Parcel 1. The respondent, in turn, filed a petition for rule to show cause based on the petitioner's failure to quitclaim her interest in the remaining 21 acres.

Repeated substitution of counsel delayed the reconvening of the

hearing until July 10, 1981. The respondent testified that during negotiations with the petitioner and her counsel, he agreed to give her the house, the garage and 10 acres. When he had the land surveyed, however, he learned that it would be difficult to create a 10-acre tract including the house and garage. He then attempted to suggest alternative dispositions of the property, involving a grant of land and cash. The petitioner did not accept these suggestions.

At the conclusion of the hearing, the court granted the respondent's petition to modify. In a written order entered December 3, 1981, the court found "that all parties and their counsel did in fact mistakenly assume that there were 10 regularly shaped acres attached to the house and garage not including the barn or lake ***." The court ordered the respondent to convey to the petitioner the 6.5-acre Tract A and pay her the reasonable value of 3.5 additional acres of the land. Three appraisals of the entire 31-acre tract were obtained, and, based on those appraisals, the court set the value of 3.5 acres of land at $3,185, in an order of May 6, 1982.

The petitioner attacked the court's modification of its original judgment in a petition filed under section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401) on July 1, 1983. She asserted that it would have been possible for the respondent to give her 10 acres contiguous to the house and garage and that the court lacked jurisdiction to modify the distribution of the parties' property. This petition was denied without a hearing. Among other court action, to be discussed below, the petitioner challenges the denial of this petition.

The petitioner argues that the trial court did not have the authority to alter the award of 10 acres to one consisting of 6.5 acres and the cash value of 3.5 acres. Section 510(a) of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 510(a)) states, "The provisions as to property disposition may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this State." The respondent's petition to modify was filed more than 30 days after the entry of judgment, but within two years of that time. The standards used in reviewing the sufficiency of that petition are therefore those governing section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72), now section 2—1401 of the Code of Civil Procedure. See *In re Marriage of Redmer* (1982), 111 Ill. App. 3d 317, 320-21, 443 N.E.2d 1075, 1077.

■ The ground alleged in the petition, and found by the trial court, for reopening the judgment was that the parties were mistaken

about the dimensions of the land. Relief is available under section 72 if a divorce decree incorporating a written agreement fails to express the real intentions of the parties because of mutual mistake concerning a property settlement. (*Groak v. Groak* (1965), 64 Ill. App. 2d 439, 212 N.E.2d 139; see also *Kelly v. Kelly* (1982), 105 Ill. App. 3d 136, 140, 434 N.E.2d 55, 58.) The court in *Groak* upheld the conclusion of the trial court that no mutual mistake had been shown. In proceedings on petitions for relief from judgments, the credibility of witnesses rests with the trier of fact, and we will not substitute our judgment for that of the trial court unless it is against the manifest weight of the evidence. (*Collins v. Prestige Casualty Co.* (1977), 54 Ill. App. 3d 762, 370 N.E.2d 103.) Here, the testimony of the parties was sharply contradictory on what they intended in dividing the land. We cannot say that the court erred in finding that they were mistaken about that provision of the judgment.

■■ The petitioner contends that she should have received a hearing on her section 2—1401 petition because there is a question of fact as to whether the respondent could have conveyed her 10 contiguous acres. We recognize that, as the diagram makes plain, the respondent could have done so by granting her the 6.5-acre Tract A and the 3.5-acre Tract B. Surveyor Wyant acknowledged that in his testimony. But this is not the question raised by the respondent's section 72 petition. Instead, that document questions whether the parties meant that L-shaped asymmetrical segment consisting of Tracts A and B when they entered into the agreement or whether they thought that 10 acres of land lay north of the lake and barn. In finding that the latter was the case, the court implicitly determined that the possibility of compliance with the original judgment was no longer at issue. We agree with this determination and hold that, inasmuch as the respondent's section 72 petition invoked the statutory jurisdiction of the court, the petitioner's allegations that the court lacked jurisdiction to grant that petition are not meritorious.

Next, the petitioner takes issue with two orders entered by the trial court after it granted the respondent's section 72 petition. The first of these was entered on June 30, 1982, when the court ordered deeds to be executed from the petitioner to the respondent conveying her interest in the parties' land, excluding Tract A. It is undisputed that the petitioner refused to execute the deeds, and, on May 19, 1982, the respondent filed a petition for rule to show cause. In a nonevidentiary hearing on the petition, held June 28, 1982, the court observed that a fine would be ineffective to compel compliance, as the petitioner could not afford to pay one. It concluded that imprisonment

would be unduly drastic, given that it could issue the deeds. The petitioner now asserts that the court lacked the authority to do so.

■ In June 1982, section 46 of "An Act to regulate the practice of courts in granting equitable relief" (Ill. Rev. Stat. 1981, ch. 110, par. 396) provided,

> "Whenever an order shall be entered, directing the execution of any deed or other writing, it shall be lawful for any judge of the court to execute or for the court to direct the sheriff to execute such deed or other writing, in case the parties under no disability fail to execute such deed or other writing, in a time to be named in the order, ***."

This certainly applies to this case, because section 502(e) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 502(e)) states that the terms of a separation agreement set forth in a judgment "are enforceable by all remedies available for enforcement of a judgment ***." The court's order of May 6, 1982, required the petitioner to execute the deeds within 30 days, and she did not do so. By the terms of section 46 of "An Act to regulate the practice of courts in granting equitable relief," the court was thus empowered to execute the deeds itself.

Finally, the petitioner claims that the court did not have the authority to enter a *nunc pro tunc* order of September 2, 1983, issuing two corrected deeds. On August 25, 1983, the respondent moved for the entry of that order, alleging that the court's order of December 3, 1981, had omitted several phrases from the legal descriptions of the property to be conveyed. Following a nonevidentiary hearing, the court entered the *nunc pro tunc* order amending its earlier order by inserting the omitted phrases.

■ According to the petitioner, the court's addition of the missing phrases was an improper use of its power to enter a *nunc pro tunc* order. The purpose of such orders is to correct clerical errors or matters of form so that the record reflects the actual order or judgment rendered by the court. (*Kooyenga v. Hertz Equipment Rentals, Inc.* (1979), 79 Ill. App. 3d 1051, 399 N.E.2d 216.) Clerical errors or matters of form are those errors, mistakes or omissions which are not the deliberate result of judicial reasoning and determination. (*Dauderman v. Dauderman* (1970), 130 Ill. App. 2d 807, 263 N.E.2d 708.) We believe that the incorrect legal descriptions of the land to be conveyed were such errors, and not errors of substance, even though the original descriptions were defective in that they did not close. An error is not a judicial error merely because its correction alters a party's obligations. *In re Marriage of Gingras* (1980), 86 Ill. App. 3d 14, 407

N.E.2d 788.

■ The petitioner further insists that even if the court had the authority to correct the legal descriptions in the deeds, it should not have done so in this case because there was no memorandum to show that the court intended to convey the property described in its amended order. Although a *nunc pro tunc* order may not be based on the court's recollection alone (*In re Marriage of McDavid* (1981), 97 Ill. App. 3d 1044, 425 N.E.2d 442), it may be based on a definite and certain record (*Dauderman v. Dauderman* (1970), 130 Ill. App. 2d 807, 263 N.E.2d 708). The comments of the court at the close of the July 10, 1981, hearing indicate that it intended for the respondent to convey Tract A to the petitioner and for the petitioner to convey to the respondent her interest in the rest of the land. At that hearing, the parties referred to the dimensions of the land shown in a map prepared by surveyor Wyant and admitted as exhibit C-1. That map contained a legal description of the land and of certain divisions in the land made by Wyant. In comparing the court's order with exhibit C-1, it is apparent that Wyant's descriptions of Parcel 1 and of all the land east of Interstate 57, excluding Tract A, contain phrases not in that order. Moreover, the deed from the respondent to the petitioner conveying Parcel 1, Tract C and Tract D has the same legal description of Parcel 1 as in exhibit C-1 and not as in the court's order. This record sufficiently establishes that the court intended to order conveyance of the property described in its amended order, even though its original order did not provide as much. We must reject the contention that the *nunc pro tunc* order was based on the court's recollection alone.

■ In the alternative, the petitioner argues that the court should not have issued the deeds from her to the respondent in the *nunc pro tunc* order. She maintains that she should have been allowed to execute the deeds, and observes that in civil contempt, a contemnor must have the opportunity to purge himself. However, as the respondent correctly observes, the petitioner was not in the same position as a contemnor and did not stand to be imprisoned or fined. She has not demonstrated that she was prejudiced in any way by the court's failure to give her yet another opportunity to execute the deeds when she would not do so after the court's earlier orders. We will not entertain assignments of error which are not prejudicial to the party complaining of them. (*In re Marriage of Melton* (1981), 93 Ill. App. 3d 338, 417 N.E.2d 220.) Nor is the court's issuance of the deeds in the *nunc pro tunc* order rendered void by the repeal of section 46 of "An Act to regulate the practice of courts in granting equitable relief" by

the Code of Civil Procedure, effective July 1, 1982. The amended order entered *nunc pro tunc* relates back to the date of the original order (*Harbeck v. Holland* (1980), 81 Ill. App. 3d 250, 401 N.E.2d 9), when the trial court certainly had the authority to order execution of the deeds.

For the foregoing reasons, the judgment of the circuit court of Williamson County is affirmed.

Affirmed.

KARNS and HARRISON, JJ., concur.