22

*In re* APPLICATION OF THE COUNTY COLLECTOR FOR JUDGMENT AND ORDER OF SALE AGAINST LANDS AND LOTS RETURNED DELINQUENT FOR NON-PAYMENT OF GENERAL TAXES AND SPECIAL ASSESSMENTS FOR THE YEAR 1983 AND PRIOR YEARS (Marquette Blackwell *et al.*, Petitioners-Appellants, v. Park Place Investment, Respondent-Appellee).

First District (6th Division)   No. 1—89—3161

Opinion filed November 9, 1990.

Anthony B. Bass & Associates, of Chicago (Anthony B. Bass, of counsel), for appellants.

Robert J. Dempsey, of Chicago, for appellee.

PRESIDING JUSTICE LaPORTA delivered the opinion of the court:

Petitioners, Marquette, Sanford and Candie Blackwell (the Blackwells), appeal a trial judge's order that denied their section 2—1401 petition to vacate the issuance of a tax deed. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401.) The deed was issued pursuant to section 266 of the Revenue Act of 1939 (Ill. Rev. Stat. 1985, ch. 120, par. 747) to Park Place Investments on land Marquette and Sanford Blackwell purchased in 1978. Candie Benita Blackwell was subsequently identified as a party with interest in the land. The Blackwells contend the trial court had no jurisdiction to order issuance of the tax deed because Park Place Investments failed to comply with section 271.1 of the Revenue Act (Ill. Rev. Stat. 1985, ch. 120, par. 752.1). Section 271.1 blocks issuance of tax deeds until reimbursement has been made to any city that has advanced public funds as authorized by its police and welfare power.

In 1978, Marquette and Sanford Blackwell purchased a three-story, 18-unit, brick apartment building at 1020-1026 E. 62nd Street and 6156-6168 S. Greenwood in Chicago. Their daughter, Candie Blackwell, also holds some interest in the property. Because the Blackwells failed to maintain the heat for the building, the City of Chicago filed three housing court actions to bring the premises into compliance with minimum health and safety standards. A temporary receiver was appointed as permitted under section 11—31—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 11—31—2). The court approved "receiver's certificates," which permitted the city to advance money for the building's upkeep. These advances, as authorized by the State statute, occurred on May 20, 1982, April 20, 1986, April 30, 1987, and April 11, 1988. The city paid money to heat the building so it would comply with minimum health and safety standards. The city thus acquired liens on the property for its advances in the total sum of $30,727.75.

During the time period when the money advances were made by the city, the Blackwells failed to pay their property taxes and the county offered the land at a sheriff's sale. Park Place Investments purchased the property November 19, 1985, for delinquent taxes; a redemption date of November 19, 1987, was extended voluntarily by Park Place Investments to April 13, 1988. The Blackwells were given proper notice but did not exercise the right to redeem the property.

On April 25, 1988, Park Place Investments petitioned the circuit

court to order issuance of a tax deed, giving notice to the Blackwells, the city and other lien holders. After the court found it had jurisdiction and that no one had redeemed the property, it ordered issuance of a tax deed. The court specifically found Park Place had complied with all notice requirements, paid all general taxes which had come due and complied with all provisions of the law entitling it to a tax deed. The order for the tax deed to be issued to Park Place Investments was entered on May 20, 1988, and the deed subsequently issued.

On November 3, 1988, the Blackwells filed a petition under section 2—1401 of the Illinois Code of Civil Procedure to set aside the tax deed. The Blackwells contend the court had no jurisdiction to order issuance of the tax deed on May 20, 1988, because Park Place Investments failed to meet its statutory obligation to pay the City of Chicago for liens the city held on the property. The Blackwells alleged that section 271.1 of the Revenue Act imposed that duty because it provides that "[n]o order for the issuance of a tax deed *** shall be entered affecting the title in any land in which a city *** shall have an interest under the police and welfare power by advancements made from public funds until the claimant shall make reimbursement to the city." (Ill. Rev. Stat. 1985, ch. 120, par. 752.1.) The Blackwells' petition also alleged fraud and conversion but those allegations were later withdrawn.

On December 2, 1988, seven months after the tax deed was issued, the City of Chicago also filed a section 2—1401 petition asking the trial court to vacate its May 20, 1988, order. The city argued that, pursuant to section 271.1 of the Revenue Act, no tax deed could be ordered until the city was reimbursed and the liens satisfied. In further support of its position, the city pointed to section 266 of the Revenue Act, which states, in part, that a tax deed cannot be issued until "petitioner has complied with all the provisions of law entitling him to a deed." (Ill. Rev. Stat. 1987, ch. 120, par. 747.) The city's petition noted that both the trial court and Park Place Investments recognized liens still were outstanding at the time the order was entered.

On August 24, 1989, the City of Chicago and Park Place Investments entered into a stipulation that provided Park Place Investments would pay the city $18,000 to release the liens. On October 26, 1989, the trial judge accepted the stipulation and the city's petition was dismissed voluntarily and with prejudice in accordance with the stipulation. The court at the same time denied the Blackwells' petition to vacate. The trial judge issued a memorandum order reviewing arguments presented by both the city and the Blackwells. The court

stated that it had jurisdiction over the subject matter and had the inherent power to sign the order.

The trial court found "uncontested" the fact that the tax deed petitioner complied with all aspects of the Revenue Act with the exception of its failure to satisfy Chicago's interest as established by various liens for outstanding receiver certificates. The trial judge commented that the city was notified but failed to appear at the May 20, 1988, hearing so the "court was satisfied that the City must no longer wish to pursue its interest."

In addition, the trial court held that section 271.1 of the Revenue Act did not apply to this case because the receiver certificates did not constitute expenditures under Chicago's police power but rather were an investment on the city's part. The court held that the city, like any other lien holder, lost its interest when the tax deed was issued. The court stated "[t]he City of Chicago could have *** enforced its interest, waived its interest or settled its interest," through silence or an affirmative action.

The court noted that, even if section 271.1 did apply, it would still find the tax deed valid because the injured party, the City of Chicago, had withdrawn its challenge to issuance of the deed. The court held that the Blackwells, a third party, cannot enforce the city's rights. The court noted that the Blackwells failed to provide heat for the building or satisfy the receiver's liens. The court stated in its denial of the Blackwells' petition that equity would not allow the "wrongdoer to take advantage of his own wrongdoing."

The Blackwells appealed, and we affirm the trial court's decision.

■ The Blackwells contend on appeal that the trial court did not have jurisdiction to order issuance of the tax deed and therefore its order was void. Under Illinois law, a judgment entered by a court is void if the court had no jurisdiction and can be attacked at any time. *Oak Park National Bank v. Peoples Gas Light & Coke Co.* (1964), 46 Ill. App. 2d 385, 395, 197 N.E.2d 73, 77.

Park Place Investments contend the court obtained jurisdiction over the property when the county collector applied to have the property sold for tax delinquency. (*Cherin v. R. & C. Co.* (1957), 11 Ill. 2d 447, 143 N.E.2d 235.) Jurisdiction, once acquired, continues through the entire proceeding, including the order to issue the deed. *City of Bloomington v. John Allan Co.* (1974), 18 Ill. App. 3d 569, 573-74, 310 N.E.2d 437, 441.

■ Petitioners argue that the court never had jurisdiction to issue the tax deed. When a court exercises statutory jurisdiction, that jurisdiction is limited to the language of the act. (*Fredman Brothers*

*Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, 210, 486 N.E.2d 893, 895-96.) The Blackwells rely on *Vulcan Materials v. Bee Construction Co.* (1981), 101 Ill. App. 3d 30, 427 N.E.2d 797, *rev'd on other grounds* (1983), 96 Ill. 2d 159, 449 N.E.2d 812, for its finding that if a party files a petition pursuant to a special statute and misrepresents facts required to be alleged by the statute before the court can proceed to act, then that party commits fraud in the procurement of the court's jurisdiction. *Vulcan*, 101 Ill. App. 3d at 40.

■ The Blackwells allege a fraud occurred on the court when Park Place Investments misrepresented that it had met the statutory requirements. But before the order was entered to issue the tax deed, the court and a Park Place Investment representative both stated on the record that the city's liens were outstanding. In denying the Blackwells' section 2—1401 petition, the trial court memorandum order stated this as a fact. Petitioners have not shown facts of any intent to deceive by the tax purchaser. The burden of proof is upon the petitioners, and the evidence must be clear and convincing and not merely suspicion. *In re Application of County Collector* (1978), 66 Ill. App. 3d 437, 447, 383 N.E.2d 1224, 1232; see also *Exline v. Weldon* (1974), 57 Ill. 2d 105, 110, 311 N.E.2d 102, 105.

We note that the *Vulcan* case on which petitioners rely presents different facts altogether. There the appellate court found several facts were unknown to the trial judge at the time the tax deed was issued. In addition, we note that *Vulcan* also found that fraud, if any, subsequent to the initial jurisdiction would render a tax court's order voidable, but not void for lack of jurisdiction. *Vulcan*, 96 Ill. 2d at 165.

■ We rely on *Cherin* and find the trial court had jurisdiction to order issuance of a tax deed. The trial court correctly found that any challenge to the issuance of the deed would make its order voidable, but not void, *ab initio*.

Since the trial court had jurisdiction to issue a tax deed, we must now consider whether the court was in error when it found section 271.1 of the Revenue Act inapplicable to the Blackwells' section 2—1401 petition. The Revenue Act of 1939 was amended in 1969 to include section 271.1. The trial court here held that section 271.1 of the Revenue Act did not apply to this case because the receiver certificates did not constitute expenditures under Chicago's police power but rather were an "investment" on the city's part, since the city took assignment of the certificates from the receivers on the building. The court held that the city, like any other lien holder, lost its interest

when the tax deed was issued.

■ A tax deed creates a new and independent title, free and clear from all previous titles and claims of every kind. (*People v. Cottine* (1959), 20 Ill. App. 2d 562, 572, 156 N.E.2d 774, 779.) But section 271.1 of the Revenue Act was enacted in 1969 to specifically protect the city's interest and require reimbursement for expenditures by the city. (*Schwartz v. City of Chicago* (1974), 21 Ill. App. 3d 84, 93, 315 N.E.2d 218, 223.) Section 271.1 does not protect the claim of any other party who might allege an interest; specifically, it does not protect the Blackwells here.

■ In prosecutions for building code violations prohibited by municipal ordinances, the municipality is exercising its regulatory police power. (*City of Chicago v. Provus* (1969), 115 Ill. App. 2d 176, 185, 253 N.E.2d 182, 186.) Here, that is exactly what the City of Chicago was doing. Actions for building code violations were brought against the Blackwells and a receiver was appointed in an effort to maintain heat in the building as required under State law. (Ill. Rev. Stat. 1981, ch. 24, par. 11—31—2.) The trial judge found that the city's purchase of receiver certificates for $1 each was a mere "investment" of city funds. To support the trial judge's view would require a belief that the receiver intended to risk his or her own money. State law provides for the appointment of a receiver and permits the receiver to expend income and incur liens on the property on the city's behalf. Contrary to the trial court finding, we believe the city's actions were within its regulatory police power and therefore section 271.1 was applicable.

The primary purpose of the Revenue Act is to render tax deeds incontestable, but it is also the duty of the court to closely scrutinize the record to determine that there has been statutory compliance before issuing a tax deed. *In re Application of County Collector for Judgment & Order of Sale Against Certain Lands & Lots* (1972), 7 Ill. App. 3d 124, 127, 287 N.E.2d 81, *aff'd In re Application of County Treasurer* (1982), 92 Ill. 2d 400, 442 N.E.2d 216.

In this case, the trial court also held that, even if section 271.1 did apply, the city waived its rights under the section by its failure to appear once notified of the tax deed hearing. The court, in denying section 2—1401 relief to the Blackwells, noted that the city was served but failed to file its appearance and therefore "the court was satisfied that the city must no longer wish to pursue its interest." The Blackwells contend the city cannot waive its interest through silence.

In a 1974 case from the fourth district, the appellate court was faced with a similar set of facts after the City of Bloomington sought

to vacate a tax deed nearly three years after the deed was issued. (*City of Bloomington*, 18 Ill. App. 3d 569, 310 N.E.2d 437.) In that case, the city expended funds for repairs and held liens on the property. It was properly notified of the tax deed hearing but failed to appear. The appellate court found that *laches* weighed strongly against any recovery for the city. In addition, the court found pertinent the public policy considerations found in section 266 of the Revenue Act, which states that tax deeds when issued are incontestable except by appeal from the order of the court directing the county clerk to issue the tax deed. That section also states that it shall be liberally construed so that tax deeds provided for shall convey merchantable title. Ill. Rev. Stat. 1973, ch. 120, par. 747.

The court there stated that the city's efforts to vacate the order "clearly undermine those goals where the tax purchaser had relied on the security of the prior procedures which had been complied with, giving merchantable title." (*Bloomington*, 18 Ill. App. 3d at 581.) A distinguishing factor between the *Bloomington* case and the case at issue here, however, is that no Bloomington liens appeared on the property's title at the time the purchaser bid on the property. Instead, the liens were approved between the time the purchaser acquired the tax sale certificate and the issuance of the tax deed. In addition, the purchaser bid on the property and the redemption period expired before section 271.1 even went into effect. In the Blackwells' case, the first city lien on the property attached in 1982, long before Park Place Investments entered the picture and long after section 271.1 was in effect.

A recent Macon County case considered the trial judge's obligation under section 271.1 and held that the court must deny motion for issuance of the tax deed if certain municipal liens exist, unless the claimant for the tax deed reimburses the municipality. (*In re Delinquent Taxes for the Year 1985* (1990), 202 Ill. App. 3d 665, 669.) That case involved interpretation of the last sentence of section 271.1, which permits a purchaser to back out of his purchase. But the court looked at section 271.1 as a whole and found that the plain language of the statute prohibits issuance of a tax deed until reimbursement is made.

■ Under the facts of this case, however, we need not determine whether the city's silence constituted a waiver on its part. The city here had the power to waive its right and did so by voluntarily dismissing its section 2—1401 petition with prejudice.

■ Since the circuit court erred by not applying section 271.1 of the Revenue Act, we now must consider whether petitioners can set

aside the tax deed based on that error. It is a general rule that an error harmful to others not appealing cannot be charged as error by a party not affected by the error. (*In re Akers* (1974), 17 Ill. App. 3d 624, 626, 307 N.E.2d 630, 631.) A person not affected by a court's alleged errors cannot avail himself of those errors on appeal. *People v. Confleur* (1920), 294 Ill. 139, 128 N.E. 339.

Park Place Investments argues that section 271.1 was designed to protect the city, not petitioners, and any failure to comply with the section touches only upon the city's rights. Park Place argues that once the redemption period expired April 13, 1988, the Blackwells had no economic or legal interest left to protect. Whether a decree is binding upon someone else is not a matter about which a third party can complain. *Clark v. Zaleski* (1911), 253 Ill. 63, 97 N.E. 272.

■ We agree and find the subsequent order for issuance of the tax deed on May 20 occurred after the Blackwells' interest in the property was extinguished. The proper time for petitioners to act to block issuance of the tax deed was during the redemption period and certainly prior to or at the May 20, 1988, hearing where order for the issuance of a tax deed was entered. In the Macon County case, the court interpreted section 271.1 with section 271, a section that deals with the time within which a deed must be requested. "[W]e conclude the legislature intended requests for section 271.1 relief were to be made in the course of proceedings for the issuance of a tax deed." *(In re Delinquent Taxes for the Year 1985*, 202 Ill. App. 3d at 669.) Objections that would have been appropriate in the original proceeding for judgment and sale for taxes are not proper here. *First Lien Co. v. Markle* (1964), 31 Ill. 2d 431, 437, 202 N.E.2d 26, 29.

■ Petitioners did not appear or voice any objections at the time the order for issuance of a tax deed was entered though they were on notice. In *In re Application of County Treasurer* (1982), 92 Ill. 2d 400, 409, 442 N.E.2d 216, 220, the supreme court cited one of its earlier cases with approval. The court stated: "[A] party may not avail himself of the remedy provided by [section 2—1401] 'unless he shows that through no fault or negligence of his own, the error of fact or the existence of a valid defense was not made to appear to the trial court. [Citations.] Such a motion or petition is not intended to relieve a party from the consequences of his own mistake or negligence.' " *Esczuk v. Chicago Transit Authority* (1968), 39 Ill. 2d 464, 467, 236 N.E.2d 719, 720, quoting *Brockmeyer v. Duncan* (1960), 18 Ill. 2d 502, 505.

■ We agree with the trial court that, regardless of the city's rights, a third party cannot now seek to intervene and repair an in-

jury it believes was done to another. The Blackwells have no standing to appeal the order of the trial court.

We find that the trial court properly held that it had jurisdiction to order issuance of a tax deed. Since the tax purchaser here had not reimbursed the city for the liens it held, the trial court was in error to order issuance of a tax deed as barred by the provisions of section 271.1. But since the city withdrew its objection to the court's order when the tax purchaser settled the liens, the order, which at best was voidable, remained in full force and effect. We affirm the trial judge's order that denied the Blackwells' section 2—1401 petition. The trial court properly found the Blackwells had no standing to appeal the trial judge's order.

Affirmed.

EGAN and RAKOWSKI, JJ., concur.