637 N.E.2d 679 (1994)
265 Ill.App.3d 482
202 Ill.Dec. 140
In the Matter of the Application of the COUNTY COLLECTOR for Judgment and Order of Sale against Land and Lots Returned Delinquent for Non-payment of General Taxes for the Year 1985 and Prior Years (R. Huffman, Petitioner-Appellant, v. David Klopfer, Respondent-Appellee).
No. 1-92-3899.
Appellate Court of Illinois, First District, Fourth Division.
June 30, 1994.
*680 Richard A. Ginsburg, and Steven A. Salzman and Timothy E. Moran of Schmidt & Salzman, Ltd., Chicago, for appellant.
Bruce M. Buyer and Michael J. Wilson, of Buyer And Rubin, Chicago, for appellee.
Justice CAHILL delivered the opinion of the court:
We address a matter of statutory construction raised by the Illinois mailing statute, Ill.Rev.Stat.1989, ch. 1, par. 1026. The respondent, at a hearing on a motion to expunge a tax redemption, testified that the envelope postmark on a redemption of the tax-delinquent property was wrong and that the redemption documents were mailed before the deadline. The trial court agreed. Petitioner bought the property at a county tax sale and contends on appeal that the trial court misinterpreted the Illinois mailing statute and that we should declare the redemption void. We agree and reverse.
Gerhardt and Audrey Damrau owned and lived in a house in Chicago. They did not pay their 1985 real estate taxes. At a tax sale on February 12, 1987, their property was put up for sale. The petitioner, R. Huffman, successfully bid on the property. Under the Illinois redemption statute, Ill.Rev. Stat.1989, ch. 120, par. 734, property can be redeemed within 2½ years of the sale. The deadline for the Damraus was August 14, 1989. Huffman filed a petition for a tax deed in the circuit court of Cook County on April 14, 1989, seeking conveyance of the Damrau property if it was not redeemed by August 14.
The respondent David Klopfer appeared at the Damrau home at about 8 p.m. on Monday, August 14, 1989. Klopfer did not know Mr. and Mrs. Damrau. He learned of the tax sale through a notice published in a local newspaper. He appeared at their home with several legal documents: a warranty deed for conveyance of the property, an estimate of redemption costs prepared by the county clerk, and an option for repurchase of the property.
Klopfer made the following offer to Mr. and Mrs. Damrau: if they immediately conveyed the property to him, he would pay the redemption cost that evening. In exchange, he offered them the right to re-purchase the property from him by December 31, 1989, for $9,000, roughly twice the redemption amount. Mr. and Mrs. Damrau agreed. A warranty deed was executed, conveying the property to Steven Levin, Klopfer's business partner. The parties also signed the re-purchase agreement.
According to Klopfer, he mailed the redemption documents at about 10 p.m. that evening by certified mail. The county clerk received the redemption on August 18, 1989, deposited the funds, and later issued a refund to Klopfer for an overpayment.
On September 25, 1989, Huffman filed a motion to expunge redemption, alleging that it was not timely filed.
An evidentiary hearing was held on October 23, 1992. Klopfer testified that he went to the Irving Park branch of the Chicago post office at about 10 p.m. on the evening of August 14, 1989. The branch was open 24 hours a day. He placed a redemption estimate and two certified checks, one for $1,000 *681 and one for $3,000, into an envelope. The envelope was addressed to the county clerk. He filled out a return card, then went to a clerk and paid for the envelope to be sent by certified mail. He told the clerk to postmark the envelope and mail it that day. Klopfer then left the post office. He later received a refund from the county clerk for overpaying the redemption amount. Klopfer called no other witnesses.
The mailing envelope was offered in evidence. It bears three dated stamps. The postal meter strip is dated August 14, 1989, and bears the meter number 3324057, the number of the machine located at the Irving Park branch. The cancellation mark, commonly referred to as the postmark, is dated August 16, 1989. The county clerk's "received stamp" is dated August 18, 1989.
Huffman presented three witnesses, including himself. Bill Vaselopolus, an employee at the county clerk's office, testified that tax redemptions are stamped "received" within a few hours of arriving in the clerk's office. He further testified that if the date on the postal meter strip is different from the postmark date, the clerk's office adopts the postmark date to determine if the deadline is met. If the postmark date is beyond the deadline date, the clerk's office returns the redemption documents and payment to the sender.
After examining the envelope in this case, Mr. Vaselopolus testified that the clerk's office accepted Klopfer's redemption in violation of office policy. He said again that the controlling date on the envelope was the postmark date of August 16, 1989. He testified that because the deadline for redemption of the subject property was August 14, the office should not have accepted the redemption.
Huffman then called Donald Clark, a 14-year employee of the United States Post Office in Chicago. Clark was familiar with the general practices and procedures of the post offices in the Chicago area in August of 1989. Clark testified that the post office used meters which were essentially the same as those owned or rented by the public. Dates can be freely changed on these machines. Clark testified that it cannot be determined from a meter strip whether it is generated by a post office meter or one privately owned or rented. He also testified that a customer can obtain a certified mailing receipt and a meter strip with a date on it from a post office clerk without mailing anything at that time.
Clark then testified that the downtown post office is the only location in Chicago where a postmark is affixed. He went on to say that metered, un-stamped envelopes normally bypass the postmarking process if the date on the meter strip is correct. However, if a postal employee notices that the meter strip date is incorrect, then that envelope is placed with the un-metered mail to be postmarked with the correct mailing date. In August of 1989, the Irving Park post office was under instructions to advance the date on their postal meter to the next day after 5 p.m. This policy was in effect because mail received after 5 p.m. was unlikely to be forwarded to the downtown post office on that day for distribution.
On cross examination, Clark admitted that Chicago post offices suffer from a 2% error ratethat roughly 2% of all mail is not handled in accord with standard post office procedures.
The Illinois mailing statute governs the question of when a mailed document is deemed to be filed with a government agency. It provides:
"Unless An Act otherwise specifically provides, any writing of any kind or description required or authorized to be filed with, and any payment of any kind or description required or authorized to be paid to, the State or any political subdivision thereof, by the laws of this State:
(1) if transmitted through the United States mail, shall be deemed filed with or received by the State or political subdivision on the date shown by the post office cancellation mark stamped upon the envelope or other wrapper containing it;
(2) if mailed but not received by the State or political subdivision, or if received but without a cancellation mark or with the cancellation mark illegible *682 or erroneous, shall be deemed filed with or received by the State or political subdivision to which it was required or authorized to be directed on the date it was mailed, but only if the sender establishes by competent evidence that the writing or payment was deposited, properly addressed, in the United States mail on or before the date on which it was required or authorized to be filed or was due. * * *
If a writing or payment is sent by United States registered mail, certified mail or certificate of mailing, a record authenticated by the United States Post Office of such registration, certification or certificate shall be considered competent evidence that the writing or payment was mailed. The date of registration, certification or certificate shall be deemed the postmarked date." (Emphasis added.) Ill.Rev.Stat. 1989, ch. 1, par. 1026.
At the close of evidence, the trial judge denied the motion to expunge redemption. She gave three reasons for her ruling. First, she found Klopfer's testimony unrebutted and credible. She noted that Klopfer's testimony satisfied Section (2) of the mailing statute in that it proved the postmark was erroneous and that the letter was mailed on August 14, 1989. Second, she gave weight to the fact that redemptions are favored under the law and that the redemption statute should be liberally construed in favor of redemptions. Finally, she gave weight to the fact that the clerk's office unconditionally accepted Klopfer's redemption when it was received. Huffman timely appealed.
The only issue on review is whether or not the trial court erred in applying the Illinois mailing statute to the facts of this case.
Section (1) of the statute establishes a general rule that documents mailed to a State agency are considered filed on the postmark date on the envelope. However, for the exceptions set out in Section (2), the date of mailing is considered the date of filing if that date is established by competent evidence.
Here, the envelope bore a legible postmark of August 16, 1989, two days after the filing deadline for the tax redemption. Under the general rule, the redemption was late. But the trial judge applied the "erroneous postmark" exception and found the alleged date of mailing, August 14, to be the date of filing.
Huffman contends that the "erroneous postmark" exception should not apply here because the postmark should be accepted over the self-serving testimony of a person who mails a document, and because Klopfer's testimony, even if true, did not establish that a postmark of August 16 is erroneous for a letter mailed the evening of August 14.
Both arguments raise questions of statutory interpretation. These are questions of law and reviewed de novo. (Village of South Elgin v. Elgin (1990), 203 Ill.App.3d 364, 149 Ill.Dec. 17, 561 N.E.2d 295.) The first rule of statutory construction is to determine and give effect to the intent of the legislature. The language of the statute is the best evidence of that intent. Burke v. 12 Rothschild's Liquor Mart, Inc. (1992), 148 Ill.2d 429, 170 Ill.Dec. 633, 593 N.E.2d 522; O'Neill v. Brown (1993), 242 Ill.App.3d 334, 182 Ill.Dec. 301, 609 N.E.2d 835.
The statute does not define an erroneous postmark. Huffman argues that the postmark must be accepted unless there is direct evidence that an error occurred at the post office. He concludes that the testimony of "the mailer" is irrelevant because it sheds no light on what may or may not have happened at the post office.
We decline to make such a rule. Credible testimony that a document was mailed on a certain date should be allowed to support an argument that a postmark is erroneous. We believe, however, that the testimony of Klopfer, standing alone, fell short of the amount of proof needed to find a postmark erroneous. Klopfer's method of proving the postmark erroneous was to establish that he mailed the documents two days before the date on the postmark. He testified that he mailed the documents on the evening of the 14th, and the postal meter strip is dated the 14th. A postal employee testified that a dated meter strip could be obtained from the post office without mailing a letter on that date.
*683 Klopfer chose not to avail himself of one example of credible evidence provided for in the statute. The last paragraph of Section (2) of the statute states that if a document is mailed by certified mail, a record of the date of certification authenticated by the United States Post Office will act as the postmark date. (Ill.Rev.Stat.1989, ch. 1, par. 1026(2).) No authenticated record of the date of certification was presented.
Most importantly, he offered no evidence that a postmark of August 16 on a letter mailed after 10 p.m. on the 14th is the result of some error in the postal system. The only testimony touching on standard post office procedures showed that a letter mailed at the Irving Park post office at 10 p.m. will receive a postmark dated the following day. Although this does not explain a postmark two days later, it does establish that even if Klopfer's testimony were accepted as true, the letter would have received a postmark beyond the deadline for redemption without the post office having committed an error. We hold that Klopfer's testimony was insufficient as a matter of law to establish the postmark as erroneous.
In construing a statute, we are required to examine it as a whole and give effect to each part. (Kraft, Inc. v. Edgar (1990), 138 Ill.2d 178, 149 Ill.Dec. 286, 561 N.E.2d 656.) The court should consider the object sought to be obtained and the evils intended to be remedied by the enactment of the statute. (Decatur v. American Federation of State, etc., Local 268 (1988), 122 Ill.2d 353, 119 Ill.Dec. 360, 522 N.E.2d 1219.) We think it is plain that the purpose of the mailing statute is to establish a clear rule and reliable standard of proof regarding when documents will be deemed filed with the State. In most cases, the postmark represents a readily provable fact. To prove a date of mailing, however, testimony and corroborating evidence may have to be elicited. It seems clear, then, that the statute was intended to prevent the necessity of hearing evidence when the postmark is available and legible.
The trial court read the statute as if the date of mailing were the date of filing, with the postmark merely acting as proof of the date of mailing. This reading allowed her to immediately find the postmark erroneous because it differed by two days from the date of mailing. Neither the statute nor the law in general establishes a presumption that a postmark is erroneous because it differs from a date of mailing, however. In cases where the date of mailing is controlling, parties often use a postmark on an envelope to establish that a letter was mailed on a certain date. However, courts have refused to allow a postmark to create a presumption that a letter was not, in fact, mailed before the date on the postmark. Schlobohm v. Police Board of Chicago (1984), 122 Ill.App.3d 541, 78 Ill.Dec. 17, 461 N.E.2d 601; 29 Am.Jur.2d Evidence, sec. 193 (1967) (postmark acts as "some evidence" but does not create presumption that letter was not placed in the mail until day shown on postmark).
In In re Application of County Treasurer, the trial court found a redemption valid even though the petitioner did not present proof of the postmark, apparently on the basis of testimony that the redemption was mailed three days before the deadline. (Application of County Treasurer & Ex-Officio County Collector (1978), 57 Ill.App.3d 550, 15 Ill.Dec. 524, 373 N.E.2d 870.) The appellate court reversed, noting that the trial court erroneously applied the mailing statute. The court stated that without the envelope itself, the petitioner could not prove the postmark absent, illegible, or erroneous. Application of County Treasurer, 57 Ill.App.3d at 554, 15 Ill.Dec. 524, 373 N.E.2d 870.
This reasoning is in accord with our interpretation of the language of the mailing statute. Proof of the date of mailing alone is insufficient to trigger an exception to the general rule that the date of the postmark is deemed the date of filing.
The trial court's other reasons for allowing the redemption in this case are insufficient to warrant affirmance. It is true that redemptions are favored under the law and that courts should liberally construe redemption laws. (Franzen v. Donichy (1956), 9 Ill.2d 382, 137 N.E.2d 825; Monreal v. Sciortino (1992), 238 Ill.App.3d 475, 179 Ill. Dec. 496, 606 N.E.2d 328.) This case, however, *684 turns on an interpretation of the mailing statute, not on the laws of redemption.
It is also true that in some cases the court has given weight to the fact that the county clerk has unconditionally accepted a redemption in deciding whether the redemption was valid. (See John Allan Company v. Sesser Concrete Products Company (1969), 114 Ill.App.2d 186, 252 N.E.2d 361; In Re Application of Williamson County Collector (1984), 128 Ill.App.3d 408, 83 Ill.Dec. 773, 470 N.E.2d 1193.) These cases, however, dealt with the clerk accepting a personal check when the statute required cash or a certified check and the clerk accepting a check which was later returned for insufficient fundsnot with redemptions which were filed late. We decline to extend their reasoning to cases in which a party misses a clearly prescribed deadline for redemption. Redemptions filed late are a nullity. In Re Application of County Collector (1968), 99 Ill.App.2d 143, 241 N.E.2d 216.
We reverse and remand for an entry of an order vacating the redemption.
Reversed and remanded.
HOFFMAN, P.J., and JOHNSON, J., concur.