SIXTH DIVISION
December 28, 2007

No. 1-06-3387

| | | |
|---|---|---|
| *In re* APPLICATION OF THE COUNTY | ) | |
| TREASURER AND *ex-officio* COUNTY | ) | Appeal from the |
| COLLECTOR OF COOK COUNTY, ILLINOIS, | ) | Circuit Court of |
| FOR JUDGMENT AND ORDER OF SALE | ) | Cook County, Illinois. |
| AGAINST REAL ESTATE RENDERED | ) | |
| DELINQUENT FOR THE NONPAYMENT | ) | |
| OF 2000 TAXES, PETITION OF HAWKEYE | ) | |
| INVESTMENTS LIMITED PARTNERSHIP | ) | |
| FOR TAX DEED | ) | |
| | ) | |
| | ) | No. 04 CoTD 5376 |
| (Hawkeye Investments Limited Partnership, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| v. | ) | |
| | ) | Honorable |
| Lisa Lanz, | ) | Raymond L. Jagielski |
| | ) | Judge Presiding. |
| Respondent-Appellee). | ) | |

JUSTICE JOSEPH GORDON delivered the opinion of the court:

Petitioner-appellant, Hawkeye Investments Limited Partnership (Hawkeye), purchased property belonging to respondent-appellee, Lisa Lanz, at a 2002 tax sale due to Lanz's failure to pay her taxes for the year 2000. Lanz then sought to redeem the property. Although her payment fell short by $22.48 on the date that the period of redemption expired, the trial court ruled that she was entitled to an equitable redemption and extended the time she had to pay the outstanding debt. It is this ruling which Hawkeye now challenges in its appeal. For the reasons that follow, we affirm.

No. 1-06-3387

I. BACKGROUND

It is undisputed by the parties that in 2000, Lanz was the owner of residential property located at 5300 South Shore Drive, Unit 105, Chicago, Illinois, 60615 (currently identified as permanent index number 20-12-112-069-1071). Lanz failed to pay real estate taxes for the property for the year 2000. As a result, the property was put up for auction at the Cook County annual tax sale held on April 11, 2002, where it was purchased by Hawkeye. The validity of the tax sale is not challenged, nor is Hawkeye's compliance with all relevant provisions of the Property Tax Code (35 ILCS 200/1-1 *et seq.* (West 2006)). The period of redemption for the property was set to expire on February 24, 2005.

As evidenced by sheriff's returns of service in the record, the sheriff personally served take notices on Lanz on October 26, 2004, and November 8, 2004. These notices informed Lanz that the property had been sold due to tax delinquency and that she had until February 24, 2005, to redeem the property. The notices further state:

"The amount to redeem is subject to increase at 6 month intervals from the date of sale and may be further increased if the purchaser at the tax sale or his or her assignee pays any subsequently accruing taxes or special assessments to redeem the property from subsequent forfeitures or tax sales. Check with the county clerk as to the exact amount you owe before redeeming."

Farther down the page, in bold print and set apart from the main text, is the message: "YOU ARE URGED TO REDEEM IMMEDIATELY TO PREVENT LOSS OF PROPERTY."

On March 28, 2005, Hawkeye filed an application for an order directing the county clerk

-2-

No. 1-06-3387

to issue a tax deed. In the application, Hawkeye alleged that there had been no redemption of the property within the legal time limit; it therefore requested that it be issued the deed to the property.

In her answer to Hawkeye's application, Lanz contended that she had redeemed the property in timely fashion and thus requested that Hawkeye's application for a deed be dismissed with prejudice. According to her allegations, she received an estimate of redemption on or about December 9, 2004, a copy of which is attached to her answer. She does not allege that the estimate was inaccurate at the time it was given to her. On or about February 23, 2005, Lanz forwarded funds to the county clerk in the amount stated on the estimate, and the clerk received the funds before the period of redemption had expired. However, after the redemption period was over, the clerk returned Lanz's payment because the amount required to redeem had increased by $22.48 since the estimate had been prepared. Lanz nevertheless asserted that her timely tender of funds in the amount specified by the clerk in the estimate constituted a redemption of the property.

On the estimate of redemption that Lanz received, $4,169.42 is listed as the grand total. Directly underneath is the text: "NOTE: THE GRAND TOTAL IS SUBJECT TO INCREASE." The document elsewhere states, in small print, "SUBSEQUENT TAXES ARE PAID BY THE TAX PURCHASER AND ARE SUBJECT TO ANNUAL INCREASE FROM THE DATE THEY ARE PAID" and "FEES: ARE SUBJECT TO INCREASE AS PAID BY THE TAX PURCHASER."

The court held a hearing on Hawkeye's application on February 23, 2006. Under

-3-

examination by her own counsel, Lanz testified that she and her former husband purchased the property at issue in 1982 and that full ownership was transferred to her pursuant to divorce proceedings in 1995. While she does not currently reside there, her elderly parents do on a part-time basis. The tax bills for the year 2000 were sent to her ex-husband, and Lanz herself was not contacted; as a result, she did not learn of the tax delinquency until December 2004.

Upon being informed of the delinquency, Lanz went to the county clerk's office on December 9, 2004, and received the estimate of redemption listing her debt as $4,169.42. On February 18, 2005, Lanz made payment to the clerk's office in the listed amount. She explained that the reason she delayed making her payment for so long was that she was experiencing health problems which eventually led to a diagnosis of breast cancer.

Lanz then testified that on February 23, the day before the period of redemption was set to expire, she received a voice mail message from a woman working at the clerk's office who identified herself as Lillian. At the time, Lanz was in California. Since she did not receive the message until evening when it was after hours, she waited until the next day, a Friday, to call back. At that time, Lillian informed her that her payment fell short by around $20. Then, according to Lanz, the following exchange took place: "She [Lillian] said, you know, 'No problem, you can bring the money in on Monday morning.' I said, 'I will be there first thing Monday morning.' And she said, 'No rush.' " Hence, on the following Monday, Lanz brought the money in to the clerk's office. However, she testified, the office refused to accept it, because the date for redemption had passed.

At the close of testimony, the court found that Lanz was not a repeated delinquent, but

rather "a taxpayer who has continuously made her payments, made them on time, has been a good landowner" except for the incident at hand. The court further found that Lanz tendered payment to the clerk before the deadline, although it was not in the correct amount, and that she later acted in reliance on the information given to her by the clerk's office in the phone conversation. Due to these circumstances, as well as the credibility of Lanz's uncontested testimony, the court stated that an equitable redemption was warranted.

The following day, the court issued an order finding that Lanz "has the equitable right to redeem the 2000 general taxes for the subject property." It ordered the county clerk to prepare a new estimate of redemption and gave Lanz 14 days from the date she received the estimate to redeem the property. Subsequently, on March 24, the court found that Lanz had redeemed the property by tendering payment in full on March 8. It therefore issued an order denying Hawkeye's application for a tax deed. Hawkeye now appeals from both of these orders.

II. ANALYSIS

The key issues we are presented with are whether the court had power to extend the statutory period of redemption under general equitable principles and, if so, whether the facts of this case warrant such an extension. Hawkeye presses us to answer both questions in the negative. We disagree on both counts.

A. Authority of the Lower Court

Illinois law provides that when a property owner, such as Lanz, is delinquent on his or her real estate taxes for a certain amount of time, the county may sell the property at a public auction (known as a tax sale) in order to recover the delinquent taxes. See 35 ILCS 200/21-110 (West

No. 1-06-3387

2006). The purchaser at the tax sale does not immediately gain title to the property; rather, there is a grace period where the property owner has the right to "redeem" the property by paying to the county clerk the delinquent taxes, as well as costs, fees, and interest. 35 ILCS 200/21-345 (West 2006); 35 ILCS 200/21-350 (West 2006) (providing that "Property sold under this Code may be redeemed at any time before the expiration of 2 years from the date of sale," with certain exceptions); 35 ILCS 200/21-370 (West 2006). If the owner makes a valid redemption, then title to the property remains with the owner, and the tax purchaser is entitled to the redemption money only. See *Smith v. D. R. G., Inc.*, 30 Ill. App. 3d 162, 169, 331 N.E.2d 614, 619 (1975) (noting that the tax purchaser's property right is "subject to redemption"), *reversed on other grounds*, 63 Ill. 2d 31, 344 N.E.2d 468 (1976). However, if the owner does not redeem the property within the designated period, then the tax purchaser may petition the court for the deed to the property (known as a tax deed). See *In re Application of Du Page County Collector*, 98 Ill. App. 3d 950, 424 N.E.2d 1204 (1981).[1]

A late redemption is a nullity. *In re Application of the County Collector*, 265 Ill. App. 3d 485, 492, 637 N.E.2d 679, 684 (1994). That is, "any redemption attempted after the period specified in the statute or as the same may have been extended has expired, is a nullity and of no legal effect." *In re Application of the County Collector*, 99 Ill. App. 2d 143, 146, 241 N.E.2d 216, 217 (1968).

The critical question of this case is whether the court had the authority to extend the

---

[1] For a more detailed overview of the Illinois tax sale and tax deed system, see *Rosewell v. Chicago Title & Trust Co.*, 99 Ill. 2d 407, 409-11, 459 N.E.2d 966, 967-68 (1984).

period of redemption beyond the statutory timeframe in reliance upon general principles of equity, at least where reliance on clerical error is involved. Hawkeye argues that the rigid statutory scheme of the Property Tax Code (35 ILCS 200/1-1 *et seq.* (West 2006)) leaves no room for judicial intervention, regardless of where the equities may lie in any particular case. Lanz, on the other hand, contends that even under the current statutory scheme, courts have the right – and, indeed, the duty – to work equity in cases involving redemption.

1. Pre-1990 Development of the Law

The state of the law with respect to equitable redemptions before 1990 was rather conflicted. This is largely a function of the competing policy considerations that underlie this area of law. On the one hand, Illinois policy favors the merchantability of tax deeds. 35 ILCS 200/22-55 (West 2006) ("This Section shall be liberally construed so that tax deeds shall convey merchantable title"); *In re Application of the County Treasurer*, 171 Ill. App. 3d 644, 648, 525 N.E.2d 852, 854 (1987) (*Sadacca*). Yet on the other hand, Illinois policy is mindful of equitable considerations when taxpayers may fall prey to the complexities of the taxing system, particularly with respect to their reliance upon the conduct, advice, and guidance of appropriate employees of the tax-collecting governmental offices. Our United States Supreme Court has stated that the right to redeem is a substantial right. *In re Application of Rosewell*, 148 Ill. App. 3d 297, 303, 498 N.E.2d 790, 794 (1986) *(Phoenix Bond)*, citing *Martin v. Barbour*, 140 U.S. 634, 646, 35 L.Ed. 546, 550, 11 S. Ct. 944, 949 (1891). As a result, Illinois law traditionally favors redemption and seeks to give a liberal construction to the redemption laws, as long as the tax purchaser suffers no injury. *Sadacca*, 171 Ill. App. 3d at 648, 525 N.E.2d at 854; *Phoenix Bond*,

No. 1-06-3387

148 Ill. App. 3d at 303, 498 N.E.2d at 794. In particular, when the exercise of the right to redeem is prevented by official mistake, courts of equity ought to intervene. *Phoenix Bond*, 148 Ill. App. 3d at 303, 498 N.E.2d at 794, citing *Martin*, 140 U.S. at 646, 35 L. Ed. at 550, 11 S. Ct. at 949.

This policy discord is reflected in the case law dealing with equitable redemptions. As Hawkeye argues, there are some pre-1990 cases that place strict limits on courts' power to ameliorate the harsh results of the revenue statutes, even where it seems that fairness and equity may suffer. "[C]ourts are without power to disregard the provisions of the statutes regulating the length of the period of redemption and *** courts cannot apply equitable considerations to the matter of redemptions and extend the period of redemption beyond that specified in the statute." *M.E. Stein & Co. v. Jones*, 133 Ill. App. 2d 561, 563, 273 N.E.2d 199, 201 (1971); see *In re Application of the County Collector*, 99 Ill. App. 2d 143, 241 N.E.2d 216 (1968) (holding that the trial court erred in denying a tax purchaser's application for a tax deed where the original owner of the property did not tender the required sum until three days after the period of redemption had expired); *Dupuy v. Morse*, 337 Ill. App. 1, 85 N.E.2d 187 (1949) (holding that the trial court erred in allowing an equitable reduction in the amount required to redeem the subject property).

However, in the 1980s, there emerged a strong line of cases in which courts modified the statutory redemption requirements in light of equitable considerations, due to property owners' good-faith reliance on incorrect statements made by county officials. The case most pertinent to the case at hand, because it involves a trial court's refusal to issue a tax deed to a tax purchaser, is

*Phoenix Bond*, 144 Ill. App. 3d 297, 498 N.E.2d 790. In *Phoenix Bond*, the county clerk's office sent estimates to the property owner erroneously stating that the redemption period for the property was to be extended by three months. As a result, the property owner did not redeem until after the period for redemption had expired. Based on these circumstances, despite the fact that the tax purchaser complied with all procedures established by the Property Tax Code, the trial court dismissed the tax purchaser's application for a tax deed. The appellate court affirmed, saying, "The record shows that an undisputed mistake was made by a public official and that [the attempted redeemer], in good faith, relied on that mistake." *Phoenix Bond*, 148 Ill. App. 3d at 304, 498 N.E.2d at 794. Thus, in light of the liberal redemption policies of Illinois, the court said that it was compelled to affirm "so that equity is done." *Phoenix Bond*, 148 Ill. App. 3d at 304, 498 N.E.2d at 794.

This approach was extensively followed in a number of cases in which a tax deed was issued to the tax purchaser but the trial court later vacated that deed due to equitable considerations. For instance, this court dealt with a case where a property owner failed to redeem within the statutory deadline because she relied on an incorrect statement by the clerk's office that her redemption would be valid as long as it was postmarked by the expiration date. *In re Application of the County Treasurer*, 84 Ill. App. 3d 506, 405 N.E.2d 869 (1980) *(McGuirk)*. The court upheld vacation of the tax deed issued in that case, stating that under the circumstances, failure to comply strictly was "a reasonable mistake having no effect on the validity of the redemption." *McGuirk*, 84 Ill. App. 3d at 510, 405 N.E.2d at 872. See also *In re Application of the County Treasurer & Ex Officio County Collector of Cook County, Illinois, for*

No. 1-06-3387

*Judgment & Order of Sale Against Real Estate Rendered Delinquent for the Nonpayment of 1980 Taxes*, 185 Ill. App. 3d 789, 542 N.E.2d 397 (1989) *(Fredericks)* (property owners entitled to vacation of tax deed where the clerk's office mistakenly informed them that they "shouldn't worry about the [tax sale] notices because the notices were not for their unit"); *Sadacca*, 171 Ill. App. 3d at 648, 525 N.E.2d at 854 (property owner entitled to vacation of tax deed where he relied to his detriment on an incorrect estimate of redemption prepared by the county clerk's office). Hence, although the prior cases were never explicitly overruled, it appeared that courts during this decade were quite willing to interpret the law flexibly in order to achieve equity and fairness in redemption cases.

On the basis of the foregoing precedent, we would find that the court was entitled to extend the time that Lanz had to redeem her property under the facts of this case. Despite the harsh language of the earlier cases, there is a clear modern trend of courts declining to apply the redemption requirements strictly in cases involving a taxpayer's detrimental reliance on erroneous statements made by the clerk's office. In particular, *Phoenix Bond*, 148 Ill. App. 3d at 304, 498 N.E.2d at 794, is directly on point: just as in the present case, the property owner relied in good faith on incorrect information given by an agent of the clerk as to the proper time of redemption, so the equities were on the property owner's side even if the strictures of the statute were not. Thus, the above cases lead us toward the conclusion that courts of equity have the power to extend the period of redemption in cases where the delay in payment occurred as a direct result of erroneous information promulgated by the clerk's office.

2. Effect of the 1990 Amendment to the Revenue Code

Hawkeye, however, contends that the matter is now exclusively controlled by section 22-45 of the Property Tax Code (35 ILCS 200/22-45 (West 2006)), which the legislature amended in 1990. It therefore argues that the above cases allowing discretionary judicial leniency due to reliance on clerk error are no longer good law.

Section 22-45 sets out both procedural and substantive requirements for the voiding of a tax deed that has already been issued. It states: "The grounds for relief *** shall be limited to: ***" and then enumerates four specific circumstances under which a tax deed may be vacated. 35 ILCS 200/22-45 (West 2006). The 1990 amendment adds the following provision:

> "In cases of the sale of homestead property in counties with 3,000,000 or more inhabitants, a tax deed may also be voided by the court upon petition, filed not more than 3 months after an order for tax deed was entered, if the court finds that the property was owner occupied on the expiration date of the period of redemption and that the order for deed was effectuated pursuant to a negligent or willful error made by an employee of the county clerk or county collector during the period of redemption from the sale that was reasonably relied upon to the detriment of any person having a redeemable interest." 35 ILCS 200/22-45 (West 2006).

Thus, the amendment strictly limits the power of the courts to vacate deeds that have been issued; in particular, vacation based upon a clerk's error is only permissible if the property at issue is homestead (*i.e.*, owner-occupied) property.

Hawkeye contends that the *McGuirk* line of cases allowing modification of statutory requirements due to equitable concerns has been superseded by this amendment, and that by

-11-

omission, the amended statute precludes all equitable relief in the present case. To support this contention, Hawkeye makes arguments regarding interpretation of the statute itself as well as subsequent case law.

First, Hawkeye argues that a plain reading of the statute indicates that the legislature did not intend for equitable relief to be granted to property owners such as Lanz. The amendment specifically allows tax deeds to be voided due to clerk errors where owner-occupied property is at stake; Lanz's property does not fall under this category. Invoking the statutory maxim of *expressio unius est exclusio alterius*, Hawkeye contends that the legislature must have intended to foreclose equitable relief in all cases where the specific conditions of section 22-45 are not met. Lanz responds by arguing that because the amendment deals solely with the circumstances under which an already-issued tax deed may be voided, it has no bearing on the issue at hand, namely, the circumstances under which a court may refuse to issue a tax deed in the first place. Therefore, Lanz contends, the *McGuirk* line of cases involving equitable relief is still good law insofar as it applies to cases involving issuance of deeds, rather than revocation of deeds.

Questions of statutory interpretation such as this one are questions of law, so we review them *de novo*. *In re Application of the County Collector*, 265 Ill. App. 3d 485, 490, 637 N.E.2d 679, 682 (1994). The primary goal of statutory interpretation is to act in accordance with the true intent of the legislature. *Hernon v. E.W. Corrigan Construction Co.*, 149 Ill. 2d 190, 194, 595 N.E.2d 561, 563 (1994). The text of the statute itself is considered the surest reflection of that intent; hence, where statutory language is clear, courts must give it effect as written without recourse to outside sources of interpretation. *Solich v. George & Anna Portes Cancer*

*Prevention Center of Chicago, Inc*., 158 Ill. 2d 76, 81, 630 N.E.2d 820, 822 (1994). However, if there is ambiguity in the language, courts may look beyond the language to consider the policy motivating the statute. *Solich*, 158 Ill. 2d at 81, 630 N.E.2d at 822. In our reading of the text, we keep in mind the interpretive canon of *expressio unius est exclusio alterius*: "Where a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions." *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 151-52, 688 N.E.2d 90, 95 (1997). We also are mindful of the fact that, when statutes are enacted after judicial opinions are published, " 'it must be presumed that the legislature acted with knowledge of the prevailing case law.' " *Fink v. Ryan*, 174 Ill. 2d 302, 308, 673 N.E.2d 281, 285 (1996), quoting *People v. Hickman*, 163 Ill. 2d 250, 262 (1994).

Section 22-45 on its face refers exclusively to cases in which a tax deed has already been issued to the tax purchaser. There is no indication in the text that the section is intended to govern any situation other than the vacation of a tax deed. Hence, the section does not purport to apply to the present case, where Hawkeye's initial petition for a tax deed was denied. We note that such a reading is consistent with the underlying policy of enhancing the marketability of tax deeds, as shall be more fully discussed below – a policy which is not pertinent to cases where a tax deed has never been issued.

The maxim of *expressio unius est exclusio alterius*, which Hawkeye presses us to apply, is unavailing here: It is a rule grounded in logic and common sense (*Bridgestone/Firestone*, 179 Ill. 2d at 152, 688 N.E.2d at 95), which both indicate that a statute should be read to exclude only those things that are within its intended scope. *Cf. Zekman v. Direct American Marketers, Inc.*,

182 Ill. 2d 359, 369, 695 N.E.2d 853, 859 (1998) ("When a statute provides a list that is not exhaustive, *** the class of unarticulated things will be interpreted as those that are similar to the named things"). Hence, while the statute may be read to exclude by omission various forms of postdeed judicial relief, it cannot reasonably be read to exclude things that are entirely beyond its scope, such as predeed judicial procedures. The statute could preclude relief in a case such as Lanz's only if it purported to deal with all circumstances under which a court might be asked to extend the redemption period, which this statute does not. It deals exclusively with the court's powers once a deed has actually issued, and thus its reach ends there.

Moreover, even if we were to find this statute to be facially ambiguous, our resolution of this issue would not change. If section 22-45 were unclear on its face, our next interpretive tool would be the public policy considerations referred to above, especially as expressed in legislative history, to help us understand the intended sweep of this provision. See *Solich*, 158 Ill. 2d at 81, 630 N.E.2d at 822. Hawkeye attempts to buttress its interpretation of the statute by quoting a statement made by one of the bill's supporters, Senator Lechowicz, in floor debate:

"The amendment would propose to codify the existing law as to relates to [*sic*] the incontestability and marketability of tax titles * * *. The amendment creates new ground for relief in these situations [covered by the exception in 22-45], while at the same time preserving the merchantability of the tax titles." 86th Gen. Assem., Senate Proceedings, May 10, 1990, at 62 (statements of Sen. Lechowicz).

According to Hawkeye, this statement reflects the legislature's intent to bar equitable relief in all cases not falling within the bounds of section 22-45. However, this piece of legislative history

actually serves to weaken Hawkeye's case. If the purpose behind the amendment is to ensure that tax deeds are incontestible in all but the most narrowly circumscribed of cases, then the amendment has no exclusionary force with respect to cases where no tax deed was ever issued in the first place. The key concern of the legislature – the merchantability of tax deeds – will not be impaired by a grant of equitable relief in such cases.

We therefore agree with Lanz that section 22-45, as amended, does not restrict courts' equitable powers with respect to pre-tax-deed redemption, but only with respect to post-tax-deed redemption. Such an interpretation is justified because it satisfies one of the key policies of Illinois courts regarding redemptions – namely, that a liberal construction should be given to the redemption laws to avoid unjust results with respect to individual taxpayers – without sacrificing the other policy goal, that of maintaining the merchantability of tax deeds once they have been issued. See *Sadacca*, 171 Ill. App. 3d at 648, 525 N.E.2d at 854; *Phoenix Bond*, 148 Ill. App. 3d at 303, 498 N.E.2d at 794.

Accordingly, we reject Hawkeye's contention that this reading of the statute renders the strict limitations of section 22-45 meaningless by allowing for alternate avenues of equitable relief before a deed has been issued to the tax purchaser. Given that the legislature's key concern is ensuring that holders of tax deeds may sell them freely without fear of later revocation, it is sensible that the conditions under which a deed may be vacated are much more narrowly circumscribed than the conditions under which a court may decline to issue a deed. Therefore, we find that *Phoenix Bond* remains untouched by the 1990 amendment to section 22-45, since it deals solely with a trial court's refusal to issue a deed, and the vitality of the *McGuirk* line of

cases is preserved insofar as its reasoning applies to cases where no tax deed was ever issued. Such a reading of the statute does not interfere with or undermine the legislature's key goal in enacting the 1990 amendment, as merchantability is not negatively affected.

Hawkeye further argues that post-1990 case law confirms that the line of equitable redemption cases has been superseded by statute. Hawkeye relies principally upon the case of *In re Application of the County Treasurer*, 267 Ill. App. 3d 993, 642 N.E.2d 741 (1994) *(MidFirst)*. In *MidFirst*, a property owner sought to vacate an order issuing a deed to a tax purchaser on grounds that a clerk's error prevented timely redemption. In denying the property owner's petition, the court found that *Sadacca*, 171 Ill. App. 3d 644, 525 N.E.2d 852, was not a legitimate basis for relief because it had been superseded by the 1990 amendment to the Property Tax Code; it stated that vacation of tax deeds is allowed under the terms of section 22-45 only. Although the court said that the equities did not weigh in favor of the property owner, it also noted that regardless of the equities, the rigid statutory scheme rendered it powerless to modify the redemption requirements on the owner's behalf. The court was clearly troubled by this conclusion, saying, "we are mindful that the strict provisions of the law may not allow court intervention to prevent a tax buyer profiting when property owners may suffer from an inability to manage their affairs due to disabilities and limitations." *MidFirst*, 267 Ill. App. 3d at 1001, 642 N.E.2d at 746. It therefore urged the legislature to further amend the Revenue Act to take account of such considerations.

However, Hawkeye cannot lean on the *MidFirst* decision for support, because the sole concern before the *MidFirst* court was whether vacation of a tax deed was proper, and its holding

is limited to those facts; it did not purport to deal with a situation like the one Lanz found herself in, where the property had not yet gone to deed. Accordingly, we decline to extend *MidFirst's* holding to cases where no tax deed was ever issued. This is in sync with our interpretation of the statute itself, which finds no quarrel with *MidFirst*: the 1990 amendment foreclosed equitable relief with respect to tax deed vacation, but this has no bearing upon property before it goes to deed. This also serves to preserve and uphold the policy goals of tax deed merchantability and equity to taxpayers, as described earlier. See *In re Application of the County Collector for Judgment & Order of Sale Against Lands & Lots Returned Delinquent For Non-Payment of General Taxes & Special Assessments For the Year 1983 And Prior Years*, 206 Ill. App. 3d 22, 28, 563 N.E.2d 1039, 1043 (1990) ("The primary purpose of the Revenue Act is to render tax deeds incontestable"). Similarly, the case of *In re Application of the County Collector*, 217 Ill. 2d 1, 838 N.E.2d 907 (2005)[2], also cited by Hawkeye, is inapposite because it deals with the circumstances under which a tax deed may be vacated under section 22-45.

Finally, Hawkeye points to the presence of the indemnity fund as an alternate grounds for relief for property owners like Lanz. Section 21-305 of the Revenue Code allows a property owner to petition for compensation when a tax sale of his or her property may result in injustice being done. 35 ILCS 200/21-305 (West 2006). Indeed, the very purpose of the indemnity fund is to work equity. *Garcia v. Rosewell*, 43 Ill. App. 3d 512, 517, 357 N.E.2d 559, 563 (1976).

---

[2] This case was subsequently vacated on an issue of due process which is unrelated to the present case. *Estate of Lowe ex rel. Harris v. Apex Tax Investments, Inc.*, 547 U.S. ___, 164 L.Ed.2d 811, 126 S.Ct. 2287 (2006).

No. 1-06-3387

Thus, says Hawkeye, even if Lanz were not allowed to redeem her property, the indemnity fund exists to ameliorate the harshness of the revenue statutes with respect to redemption procedures.

While we do not dispute Hawkeye's contention that Lanz has a colorable indemnity claim, the presence of an alternate potential avenue of relief has no bearing upon whether Lanz may pursue her chosen avenue of relief, namely, a judicial extension of the time allowed to redeem her property. And as has been discussed above, we find that both legislative history and policy concerns demonstrate that the court had authority to order such an extension in the instant case.

B. Propriety of the Lower Court's Decision

Hawkeye next contends that, even if the lower court had the authority to extend the time period for Lanz to redeem her property, it should not have done so under the circumstances of this case. It argues that Lanz's reliance on Lillian's statements was not reasonable, and that even if Lillian had given her the correct information, there is no evidence that she would have been able to redeem before time expired.

Given that the trial court was empowered to extend the redemption period beyond the statutory deadline due to general equitable principles, we will not overturn its decision absent an abuse of discretion. *Cf. McGuirk*, 84 Ill. App. 3d at 510, 405 N.E.2d at 872.[3] In addition, to the extent that issues of fact may have an effect on our determination of the case, we will defer to the trial court's factual findings unless they are against the manifest weight of the evidence. *In re*

---

[3] The *McGuirk* court applied an abuse of discretion standard to the trial court's decision to vacate a tax deed. Although this case does not involve vacation of a deed, there is no reason to apply a different standard of review in a case involving refusal to issue a deed.

-18-

No. 1-06-3387

*Marriage of McDavid*, 97 Ill. App. 3d 1044, 1054, 425 N.E.2d 442, 449 (1981).

Hawkeye's first argument regarding the propriety of the trial court's decision is that Lanz's reliance on the statements made by the clerk's office was unreasonable and at her own peril. However, Illinois courts have repeatedly found reliance deserving of relief in tax sale cases where clerk error prevented a property owner from redeeming in a timely fashion. See *Fredericks*, 185 Ill. App. 3d at 795, 542 N.E.2d at 401; *Sadacca*, 171 Ill. App. 3d at 648, 525 N.E.2d at 854; *McGuirk*, 84 Ill. App. 3d at 510, 498 N.E.2d at 794. Although the specific holdings of these cases have been superseded by statute with respect to conditions sufficient for vacation of a tax deed, they remain untouched when it comes to the question of whether reliance entitles a property owner to equitable relief, should such equitable relief be otherwise available prior to the issuance of a tax deed.

Hawkeye also contends that Lanz's failure to pay could not have been the result of any reliance on the clerk's statements, because even had she received the correct information about the time in which she had to redeem the property, she would not have been able to redeem before the statutory period had ended. Lanz spoke with Lillian on February 24, 2005, the day that the period of redemption expired. At the time, Lanz was in California. According to section 21-355 of the Property Tax Code, a redemption payment will only be considered timely if it is received in person on or before the date the redemption period expires, or if it is sent by mail with a postmark dated at least one day before the period expires. 35 ILCS 200/21-355 (West 2006). Hawkeye says that the latter option was clearly not possible, because the phone call was made on the expiration date itself, and that Lanz presented no evidence to show that an in-person delivery was

-19-

possible. Lanz, on the other hand, points out that she could potentially have made in-person payment through the acts of an agent or attorney and that Hawkeye presented no evidence to show that such delivery was *not* possible.

If we were reviewing this issue *de novo*, we might have difficulty in coming to a resolution. But here, we defer unless the trial court's ruling is against the manifest weight of the evidence – and the trial court made specific findings that Lanz's testimony was credible and that she did indeed act in reliance on the information given to her by the clerk's office. Since Hawkeye can offer no evidence to rebut the claim of reliance, the trial court's findings cannot be against the manifest weight of the evidence, so we shall accept those findings as true.

Thus, we find that the trial court did not abuse its discretion in concluding that Lanz was entitled to an extension of time for redemption of her property.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

McBRIDE, P.J., and O'MALLEY, J., concur.